Marc S. Schechter, Bar No. 116190
Paul D. Woodard, Bar No. 282470
BUTTERFIELD SCHECHTER LLP
10021 Willow Creek Road, Suite 200
San Diego, California 92131-1603
(858)444-2300/FAX (858)444-2345
mschechter@bsllp.com
pwoodard@bsllp.com

Brent Buchsbaum, Bar No. 194816
Law Offices of Buchsbaum & Haag, LLP
100 Oceangate Ste 1200
Long Beach, CA 90802
562-733-2498  Fax: 562-628-5501
brent@buchsbaumhaag.com

Attorneys for Plaintiff Tim Alders

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM ALDERS, <br><br> Plaintiff, <br><br> v. <br><br> YUM! Brands, Inc.; TACO BELL CORP.; and DOES 1 through 20, <br><br> Defendants. | CASE NO.   8:21-cv-1191 <br><br> COMPLAINT FOR ACTIONS ARISING UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT AND RELATED STATE LAW ACTIONS |

Plaintiff Tim Alders ("Plaintiff"), in his individual capacity, by and through his undersigned counsel, files this Complaint against Defendants YUM! Brands, Inc. (hereinafter "YUM"), Taco Bell Corp. ("Taco Bell"), and DOES 1-20 (the aforementioned defendants are collectively referred to herein as "Defendants") as follows:

## **INTRODUCTION**

1.      Plaintiff brings this action for declaratory relief and benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and appropriate equitable relief pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

2.      Plaintiff seeks recognition of his years of employment for YUM from 1995 through December 31, 2020 (the "relevant time"), for purposes of calculating his retirement benefits with the following plans: (1) the YUM! Brands Pension Equalization Plan (the "PEP"); (2) the YUM! Brands Executive Income Deferral Program (the "EID"); and (3) the YUM! Brands, Inc. Retirement Plan (the "Salaried Plan") (the aforementioned retirement plans are collectively referred to herein as the "YUM Plans").

3.      During the relevant time, common law employees were eligible to participate in the YUM Plans under the terms of the governing plan documents, including those common law employees who, like Plaintiff, were labeled otherwise but nevertheless met he test for employee status under *Nationwide Mutual Insurance v. Darden,* 503 U.S. 318 (1992) and *Dynamex Operations West Inc. v. The Superior Court of Los Angeles County and Charles Lee, Real Party in Interest,* 4 Cal.5th 903 (Cal. 2018).

4.      Plaintiff brings this action for unpaid benefits to which he was entitled and did not receive as a result of his misclassification as an independent contractor under § 502 of ERISA, 29 U.S.C. § 1132.

## JURISDICTION AND VENUE

5.      **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e) and (f), and 29 U.S.C. § 1331.

6.      **Personal Jurisdiction**. ERISA provides for nation-wide service of process pursuant to ERISA § 502, 29 U.S.C. § 1132. All defendants are either residents of the United States or subject to the service in the United States, and this Court therefore has personal jurisdiction over them.

7.      **Supplemental Jurisdiction**. This Court has supplemental jurisdiction over the fourth, fifth, sixth, and seventh causes of action of this Complaint pursuant to 28 U.S.C. § 1367 in that all claims and causes of action

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

within this Complaint are so related that they comprise one case, and all claims and causes of action arise from the same operative facts.

8.      **Venue**. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breaches took place in this judicial district; to wit, the Defendants failed to properly classify Plaintiff in this district as a "employee" and refused to extend to him ERISA benefits despite his employment in this district. Venue is further proper in this district because at least one of the defendants may be found within this district.

## PARTIES

9.      Plaintiff is 63 years old. He resides in Orange, California. During the relevant time period, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the YUM Plans.

10.     Defendant YUM was incorporated under the laws of the State of North Carolina in 1997. The principal executive offices of YUM are located at 1441 Gardiner Lane, Louisville, KY 40213. YUM conducts business throughout the State of California including the district where the action is filed.

11.     Defendant Taco Bell is a California corporation with its principal place of business located at 1 Glen Bell Way, Irvine, California 92618. Taco Bell is a wholly owned subsidiary of YUM. Taco Bell conducts business throughout the State of California including the district where the action is filed.

12.     Does 1 through 20 are fictitiously named defendants whose true names and identities have not yet been ascertained, but who, upon information and belief, are in some way responsible for the harm alleged by Plaintiff in this Complaint. Once such defendants have been properly identified, Plaintiff will request leave of the Court to amend this Complaint in order to incorporate these defendants using their true names and identities.

## THE RETIREMENT PLANS

13.     On information and belief, the Salaried Plan is, and has been at all

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

relevant times, an employee pension benefit plan within the meaning of ERISA 3(2), 29 U.S.C. 1002(2). On information and belief, the Salaried Plan is both sponsored and administered by YUM. At all relevant times, YUM was a fiduciary of the Salaried Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Salaried Plan was previously known as the Tricon Salaried Employees Retirement Plan and the Tricon Retirement Plan.

14.    On information and belief, the PEP is, and has been at all relevant times, an excess benefit plan within the meaning of ERISA 3(36), 29 U.S.C. § 1002(36). On information and belief, prior to September 1, 2004, the PEP was known as the Tricon Pension Equalization Plan. On information and belief, from September 1, 2004, to present, YUM has been the plan sponsor and plan administrator of the PEP.  At all relevant times, YUM was a fiduciary of the PEP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). On information and belief, the PEP provides benefits for eligible employees whose pension benefits under the Salaried Plan are limited by the provisions of the Internal Revenue Code of 1986, as amended.

## **FACTUAL BACKGROUND**

15.    Plaintiff incorporates by reference the above paragraphs as though they were fully set forth herein.

### **YUM! Brands History**

16.    PepsiCo acquired Pizza Hut, Taco Bell, and KFC in 1977, 1978, and 1986, respectively.

17.    YUM was created on May 30, 1997, as Tricon Global Restaurants, Inc., as a result of a spin-out of the former fast-food division of PepsiCo, which owned and franchised the KFC, Pizza Hut, and Taco Bell brands worldwide.

18.    In 2002, Tricon Global Restaurants, Inc. merged with Yorkshire Global Restaurants, owner of the Long John Silver's and A&W Restaurants chains, to form YUM! Brands, Inc.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

19. YUM currently operates quick-service restaurant systems throughout the United States including KFC, Pizza Hut, Taco Bell, The Habit Burger Grill, and Wingstreet (referred to herein as "YUM Owned Brands").

20. YUM is one of the world's largest fast food restaurant companies in terms of system units.

21. YUM is a publicly traded company on the New York Stock Exchange under the ticker symbol "YUM".

22. On information and belief, YUM is the alter ego of YUM Owned Brands and essentially are extensions of each other and jointly responsible for the liabilities of each other.

### Plaintiff's Employment History

23. The employee relationship began in 1995 when Plaintiff agreed to a position as a recruiter for Taco Bell at the time in which the company was owned by PepsiCo.

24. Plaintiff was tasked with building an internal executive search and retention practice within the company.

25. In 1997, KFC, Taco Bell, and Pizza Hut were spun away from PepsiCo's fast-food division and moving forward were operated under Tricon Global Restaurants, Inc.

26. After the spin-off, Plaintiff began working for Tricon Global Restaurants, Inc., and eventually YUM after it was established in 2002, bringing with him and continuing to build on his already established internal executive search and retention practice.

27. From 2002 through December 31, 2020, Plaintiff worked for YUM and performed services for YUM Owned Brands. During his tenure, Plaintiff was compensated by YUM and/or YUM Owned Brands.

28. During his 25 years of employment, Plaintiff held the title of Executive Recruiter.

29.     As an Executive Recruiter, Plaintiff performed a variety of duties including, but not limited to, the following:

(a)     Locating talented individuals to fill employee positions at YUM and/or YUM Owned Brands in the areas of Information Technology, Marketing, Finance, Human Resources, Operations, Research and Development, and Communications;

(b)     Finding and filling Director positions all the way up to C level (COO, CFO, etc.) positions at YUM and YUM Owned Brands;

(c)     Working daily with cross functional leaders and leadership team members and his direct subordinates to address current search activity concerning organization structure and future executive level needs across YUM and YUM Owned Brands;

(d)     Teaching other employees of YUM and YUM Owned Brands how to effectively recruit and retain potential talent including drafting corporate materials on the topic and presenting the materials to YUM employees;

(e)     Actively participating in and attending YUM organization-wide events that included social, monthly organizational updates, off-site team building exercises, and weekly staff meetings;

(f)     Building and leading a research team in support of all YUM Owned Brands as well as YUM itself in filling positions across the United States and internationally;

(g)     Speaking at YUM corporate events in front of large audiences of YUM employees on various recruiting and researching topics; and

(h)     Traveling to YUM Owned Brands' corporate offices in Louisville, Kentucky and Dallas, Texas, to participate in various meetings and coach the local recruiters and research professionals.

30.     The above services rendered by Plaintiff were an integral part of YUM's business that Plaintiff performed for twenty-five years. During his long-

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

tenured career, Plaintiff was regularly recognized for his accomplishments and was the recipient of various YUM company awards.

31.     Plaintiff was so deeply involved with YUM and YUM Owned Brands that over the many years of service, Plaintiff became a cultural center piece due to the way he led with enthusiasm, caring for others, and making sure that everyone enjoyed each day through levity. For example, Taco Bell created what is called the annual "Tim Calendar" as well as the "Tim Pillow", "Tim Socks" and "Tim Drink Holder".

32.     During the relevant time period, YUM classified Plaintiff as an independent contractor, not an employee.

33.     At all times during which YUM intentionally misclassified Plaintiff as an independent contractor, YUM controlled both the work performed and the manner and means in which Plaintiff performed his work in the following ways:

(a)     YUM directed when, where, and how Plaintiff's work was to be done.

(b)     Plaintiff did not maintain his own work facilities. Instead, from 1995 through January 2021, Plaintiff was provided his own private office and was required to work at Taco Bell's Corporate Office Headquarters located in Irvine, California. Plaintiff's employment with YUM was continuous during this time period.

(c)     YUM strictly directed Plaintiff's hours and days off. For example, Plaintiff was expected to and did in fact arrive to his office by 8 a.m. and would work until at least 6:00 p.m. (often later). Plaintiff was also required to be available to YUM beyond the normal 8 a.m. to 6:00 p.m. workday including being available on weekends. Plaintiff regularly worked in excess of 40 hours per week.

(d)     Plaintiff was required to log into YUM's corporate computer system every morning and was directed to utilize the computer system to conduct all of his work.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

(e)    Plaintiff reported directly to senior HR leadership team members for YUM and YUM Owned Brands.

(f)    Plaintiff also reported directly to the chief talent officer for YUM.

(g)    YUM dictated the specific order and sequence of work performed by Plaintiff in accordance with YUM's company policy.

(h)    YUM assigned, directed, supervised, and controlled the employee recruitment services performed by Plaintiff.

(i)    Plaintiff was provided a YUM corporate email address (plaintiff@YUM.com) and a Taco Bell email address (plaintiff@tacobell.com). Plaintiff was required to use these two email addresses to provide all services to YUM and YUM Owned Brands during Plaintiff's employment.

(j)    YUM paid for and/or provided Plaintiff's office, office supplies, work computer, and laptop. Plaintiff was not responsible for paying for any of his office supplies.

(k)    YUM paid for all of Plaintiff's business-related travel, which was frequent. Plaintiff would routinely visit YUM Owned Brands' corporate campuses located in Louisville and Dallas.

(l)    Plaintiff was required to attend YUM employee-only events and meetings including those discussing highly confidential corporate matters.

(m)    YUM conducted annual performance evaluations of Plaintiff which were linked to Plaintiff's annual salary and bonus determinations.

(n)    YUM required Plaintiff to complete annual employee training on the topics of professional behaviors in the workplace (harassment) and computer security. Plaintiff had to complete questions following the training and would not be allowed to continue working until after the training and questions were completed in a satisfactory manner.

34.    During the entire time he worked as a common law employee for

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00414924.DOCX / 3}

8

Complaint                                                                     Case No. 8:21-cv-1191

YUM and YUM Owned Brands, Plaintiff was misclassified as an independent contractor.

35.     Upon information and belief, other similarly situated YUM employees received salaries, bonuses, and employees benefits such as pensions, vacation pay, and health insurance. However, Plaintiff was only compensated on a monthly basis as an independent contractor and received no other employee benefits although he was treated as an employee for all other purposes.

36.     Unlike other similarly situated YUM employees, Plaintiff did not receive paid holidays or paid time off during his tenure at YUM.

37.     Although he was classified by YUM as an independent contractor, Plaintiff was prohibited from taking on outside work to perform similar services for other quick service or fast-food businesses.

38.     As a result, stripped of all the legal fictions and artificial barriers to an honest classification of the relationship between Plaintiff and YUM, Plaintiff was an employee of YUM, not an independent contractor.

**Plaintiff Was Improperly Excluded From Participation in the YUM Plans**

39.     Upon information and belief, YUM provides generous employee benefits to current employees through the YUM Plans.

40.     Upon information and belief, employees who were employed by YUM or a YUM Owned Brand were eligible to participate in the YUM Plans.

41.     Upon information and belief, all YUM or YUM Owned Brand employees are eligible to participate in the Salaried Plan so long as they satisfy applicable age and length-of-service requirements.

42.     In addition, certain management level employees of YUM are also eligible to participate in the PEP, and the EID.

43.     Plaintiff, had he been properly recognized as a common law employee during his term of service, would have been a Participant in each of the YUM Plans and therefore has claims for vested benefits.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

44.   As a result of the misclassification of Plaintiff as an independent contractor, Plaintiff was deprived of the rights and protections guaranteed by state and federal law to common law employees, including rights under ERISA.

45.   Specifically, by their mischaracterization of Plaintiff as an "independent contractor", Defendants have excluded Plaintiff from the definition of "employee" covered by the YUM Plans and eligible to participate in the YUM Plans, thereby denying Plaintiff benefits he is entitled to receive.

**It is Futile For Plaintiff To Exhaust Administrative Remedies, If Any**

46.   On April 12, 2021, Plaintiff sent certified letters to the plan administrator of the Salaried Plan, the PEP, and the EID requesting: (a) a copy of each plan's plan document (including all amendments); (b) a copy of each plan's trust agreement; (c) a copy of each plan's summary plan description.

47.   Plaintiff did not receive a response whatsoever to his written request for plan documents made to the PEP or the EID. Without access to the plan documents, Plaintiff is unaware of any benefit claim procedures currently in place. As such, the exhaustion requirement is believed to be futile here as to the PEP and EID based on YUM's failure to even respond to Plaintiff's request for plan documents.

48.   On April 22, 2021, YUM responded via letter to Plaintiff's written request seeking documents pertaining to the Salaried Plan. In the letter, YUM requested certain information from Plaintiff to verify his identity and entitlement to benefits.

49.   On May 31, 2021, Plaintiff sent YUM a certified letter and email requesting a copy of his "benefit statement" for the Salaried Plan and PEP.

50.   On June 2, 2021, YUM responded by requesting Plaintiff's Social Security Number and date of birth.

51.   On June 2, 2021, Plaintiff provided YUM with the requested information verifying his identity.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

52.     On June 11, 2021, YUM responded stating that YUM is unable to provide Plaintiff with a copy of his benefit statement or plan documents because Plaintiff is not a plan participant under the PEP or Salaried Plan.

53.     Plaintiff has not been provided with access to the pertinent plan documents. As such, the exhaustion requirement is believed to be futile here as to the Salaried Plan and PEP based on YUM's failure to even respond to Plaintiff's request for plan documents or his participant benefit statement.

54.     Further, as a result of being misclassified as an independent contractor, Plaintiff lacks meaningful access to the review procedures under the YUM Plans and believes the remedies under the YUM Plans to be inadequate.

55.     Accordingly, to the extent that Plaintiff's claims are construed to be directed to the interpretation of the YUM Plans and not their legality, and to the extent any administrative remedies were available, it would have been futile for Plaintiff to pursue them.

## FIRST CLAIM FOR RELIEF

**[Claim for Clarification of Right to Future Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]**

**(By the Plaintiff against All Defendants)**

56.     Plaintiff incorporates by reference the above paragraphs as though they were fully set forth herein.

57.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due him under the terms of a plan, to enforce his rights under the terms of the plan, and/or to clarify his right to future benefits under the terms of the plan.

58.     The terms of the Salaried Plan and the PEP provide that Plaintiff, as a common law employee of YUM, accrued pension service credits during the times he was misclassified as an independent contractor. Denying Plaintiff pension service credits during this time violates the terms of the Salaried Plan and the PEP

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

and Plaintiff's rights thereunder.

59.    As a common law employee of YUM, Plaintiff was eligible to participate in the PEP and the Salaried Plan.

60.    YUM misclassified Plaintiff as an independent contractor instead of an employee thus depriving him of employee benefits to which he was entitled.

61.    Plaintiff seeks the relief as prayed for below.

## SECOND CLAIM FOR RELIEF

### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]

### (By the Plaintiff against All Defendants)

62.    Plaintiff incorporates by reference the above paragraphs as though they were fully set forth herein.

63.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due him under the terms of a plan, to enforce his rights under the terms of the plan, and/or to clarify his right to future benefits under the terms of the plan.

64.    The terms of the Salaried Plan and the PEP provide that Plaintiff, as a common law employee of YUM, accrued pension service credits during the times he was misclassified as an independent contractor.

65.    Plaintiff seeks the relief as prayed for below.

## THIRD CLAIM FOR RELIEF

### [Claim for Appropriate Equitable Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)]

### (By the Plaintiff against Defendants)

66.    Plaintiff incorporates by reference the above paragraphs as though they were fully set forth herein.

67.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

68.     ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1), requires that an employer which sponsors an employee benefit plan maintain records with respect to each of its employees sufficient to determine the benefits due or which may become due to the employees.

69.     Pursuant to the terms of the PEP and Salaried Plan, a participant's vested and accrued pension benefit is dependent on his or her years of service.

70.     Defendants misclassified Plaintiff as an independent contractor during the relevant years.

71.     Defendants have not maintained records of hours of service or years of service with respect to Plaintiff.

72.     By its failure to record service credits for misclassified common law employees like Plaintiff, Defendants have failed to maintain records with respect to Plaintiff sufficient to determine the benefits due or which may become due to Plaintiff in violation of ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

73.     To remedy these violations of ERISA by Defendants, Plaintiff seeks the injunctive relief and other equitable relief as prayed for below.

## **FOURTH CLAIM FOR RELIEF**

### **[Supplemental State Claim – Breach of Contract]**

### **(By the Plaintiff against All Defendants)**

74.     Plaintiff incorporates by reference the above paragraphs as though they were fully set forth herein.

75.     On information and belief, YUM established the EID in 1997 to permit eligible executives to defer compensation and other awards under its executive compensation programs.

76.     On information and belief, the EID is intended to be a nonqualified

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

1   deferred compensation plan that is unfunded and unsecured.

2       77.   On information and belief, YUM established the EID allowing

3   common law employees to defer the receipt of a portion of their income and

4   bonuses.

5       78.   On information and belief, the EID allows participants to defer up to

6   85% of their base salary and 100% of their bonus.

7       79.   67.   On information and belief, the EID allows participants to defer

8   all or a portion of their eligible incentive bonus into the YUM Matching Stock

9   Fund.

10      80.   On information and belief, deferrals into the YUM Matching Stock

11  Fund are invested in phantom YUM! Common Stock and participants receive

12  additional phantom shares equal to 33 1/3% of the phantom shares received as a

13  result of the participant's deferral.

14      81.   On information and belief, all directors and executive level

15  employees at YUM eligible to receive an annual incentive are eligible to

16  participate in the EID.

17      82.   Although Plaintiff worked as an Executive Recruiter and received an

18  annual incentive from YUM, Plaintiff was not allowed or invited to participate in

19  the EID.

20      83.   The terms of the EID provide that Plaintiff, as an executive level

21  common law employee of YUM, should have been permitted to participate in the

22  EID program.

23      84.   YUM breached the terms of the EID by not providing Plaintiff with

24  an opportunity to participate in the EID.

25      85.   YUM was the proximate cause of Plaintiff being unable to participate

26  in the EID as YUM controlled which employees were invited to participate in the

27  program and YUM misclassified Plaintiff as an independent contractor.

28      86.   Plaintiff was damaged by not being permitted to participate in the EID

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

to the extent he was unable to defer his compensation and reduce his potential tax exposure based on his income.

87.   Plaintiff was further damaged by not being able to defer any of his incentive bonus into the YUM Matching Stock Fund and thereby receive additional phantom shares.

88.   Plaintiff seeks the relief as prayed for below.

### FIFTH CLAIM FOR RELIEF

**[Supplemental State Claim - Violation of California Labor Code §§ 201-203— Failure to Pay All Wages and on a Timely Basis]**

**(By the Plaintiff against All Defendants)**

89.   In misclassifying Plaintiff as an "independent contractor," Defendants failed to pay required employer-side payroll taxes, passing off this expense to Plaintiff in the form of self-employment taxes. This violates the Federal Insurance Contributions Act ("FICA").

90.   Further, Section 6672(a) of the United States Code provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

91.   The failure to pay this kind of benefit, amounts to an underpayment under the broad definition of "wages" set forth in Labor Code §200.

92.   As the California Supreme Court explained in ***Murphy v. Kenneth Cole Productions, Inc.***, 40 Cal.4th 1094, 1103 (2007): "[t]he Labor Code defines "**wages**" as "all amounts for labor performed by employees of every description,

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other methods of calculation." (§200(a))

93.    Courts have recognized that "wages" also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay."

94.    By not paying Plaintiff his full wages and forcing him to cover the employer payroll tax obligation, Defendants have repeatedly failed to pay Plaintiff all wages that were due when they issued him his salary checks.

95.    Further, those back wages were not paid immediately upon separation, or within 72 hours of separation.

96.    At all relevant times herein and as alleged herein, Defendants failed to pay to Plaintiff all wages by the times required by law in the time periods set forth by California Labor Code § 204 regarding the time of wage payments were not adhered to and all regular wages were not paid.

97.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

98.    During the relevant time period, Defendants willfully failed to pay Plaintiff earned and unpaid wages, either at the time of discharge, or within 72 hours of his leaving YUM's employ.

99.    Defendants' failure to pay Plaintiff his wages earned and unpaid at the time of discharge is in violation of California Labor Code §§ 201 and 202.

100.   California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with §§ 201 and 202, then the wages of the

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

16

1  employee shall continue as a penalty from the due date, and at the same rate until

2  paid or until an action is commenced; but the wages shall not continue for more

3  than thirty days.

4      101.   Plaintiff is entitled to recover from Defendants his additionally

5  accruing wages for each day he was not paid, at his regular daily rate of pay, up to

6  thirty days maximum pursuant to California Labor Code § 203.

7      102.   Plaintiff seeks to recover the unpaid balance of the full amount of the

8  unpaid regular wages and interest thereon, reasonable attorneys' fees and costs of

9  the suit to the fullest extent permissible including those permitted pursuant to the

10  California Labor Code §§ 203, 218.5, 218.6 and Code of Civil Procedure § 1021.5.

11                **SIXTH CLAIM FOR RELIEF**

12  **[Supplemental State Claim - Violation of Labor Code § 2802—**

13                **Unreimbursed Expenses]**

14          **(By the Plaintiff against All Defendants)**

15      103.   Plaintiff incorporates all paragraphs above as though fully set forth

16  herein.

17      104.   Under Labor Code §2802, an employer must indemnify its employees

18  "for all necessary expenditures or losses incurred by the employee in direct

19  consequence of the discharge of his or her duties."

20      105.   While the YUM did cover most of Plaintiff's business expenses,

21  certain costs were passed on to Plaintiff.

22      106.   Defendants required Plaintiff to use a personal cell phone for work-

23  related purposes, but failed to provide any cell phone reimbursement, even though

24  the phone was necessary for carrying out his job duties.

25      107.   There was no reimbursement for data expenses that were also

26  necessary for viewing emails and performing other work outside the office.

27      108.   Additionally, there was necessary driving expenses for work-related

28  purposes, but Defendants failed to provide reimbursement under IRS mileage rates

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

Complaint                                          Case No. 8:21-cv-1191

1    or otherwise, passing the cost off on Plaintiff.

2        109.   Any contractual provision that purports to allow this would be void

3    as against public policy.  *See* Labor Code §2804.

4        110.   Plaintiff was damaged by having to pay for necessary business

5    expenses out of his own personal funds.

6        111.   Plaintiff was further damaged by having to pay for his own insurance

7    premiums for health insurance coverage for himself and his spouse.  Normally,

8    such health insurance coverage would have been provided by YUM but for

9    Plaintiff's misclassification as an independent contractor.

10       112.   Plaintiff also seeks attorney's fees under Labor Code § 2802(c)

11   because these fees were necessarily incurred in protecting the rights of Plaintiff to

12   the underlying reimbursement claim.

### SEVENTH CLAIM FOR RELIEF

**[Supplemental State Claim - Violation of California Business & Professions Code § 17200, et seq.]**

**(By the Plaintiff against All Defendants)**

17       113.   Plaintiff incorporates all paragraphs above as though fully set forth

18   herein.

19       114.   Defendant YUM and Taco Bell are considered a "person" as defined

20   under Business & Professions Code § 17021.

21       115.   Defendants' conduct, as alleged herein, has been, and continues to be,

22   unfair, unlawful, and harmful to Plaintiff and to the general public.

23       116.   Plaintiff seeks to enforce important rights affecting the public interest

24   within the meaning of Code of Civil Procedure § 1021.5.

25       117.   Defendants' activities, as alleged herein, are violations of California

26   law, and constitute unlawful business acts and practices in violation of California

27   Business & Professions Code § 17200, et seq.

28       118.   A violation of California Business & Professions Code § 17200, et

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

Complaint                                                      Case No. 8:21-cv-1191

seq. may be predicated on the violation of any state or federal law.

119.   All of the acts described herein as violations of, among other things, the California Labor Code and IWC Wage Orders, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business and Professions Code § 17200, et seq.

### Failing to Timely Pay Wages Upon Termination

120.   Defendants' failure to timely pay wages, including the failure to pay employer payroll taxes, upon termination in accordance with California Labor Code §§ 201 and 202, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

### Failing to Provide Accurate Itemized Wage Statements

121.   Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

### Failing to Reimburse for Business Expenses

122.   Defendants' failure to reimburse for necessary business expenses violates California Labor Code § 2802, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code § 17200, et seq.

123.   By and through it's unfair, unlawful and/or fraudulent business practices described herein, Defendants' have obtained valuable property, money, and services from Plaintiff, and have deprived Plaintiff of valuable rights and benefits guaranteed by law, all to his detriment.

124.   Plaintiff suffered monetary injury as a direct result of Defendants' wrongful conduct.

125.   Plaintiff is entitled to, and does, seek such relief as may be necessary

{00414924.DOCX / 3}

Complaint                                                                 Case No. 8:21-cv-1191

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

1  to disgorge the profits which the Defendants have acquired, or of which Plaintiff

2  has been deprived, by means of the above-described unfair, unlawful and/or

3  fraudulent business practices.

4    126.   Plaintiff is further entitled to and does seek a declaration that the

5  above-described business practices are unfair, unlawful and/or fraudulent, and

6  injunctive relief restraining Defendants from engaging in any of the above-

7  described unfair, unlawful and/or fraudulent business practices in the future.

8    127.   Plaintiff has no plain, speedy, and/or adequate remedy at law to

9  redress the injuries which he has suffered as a consequence Defendants' unfair,

10  unlawful and/or fraudulent business practices.

11    128.   As a result of the unfair, unlawful and/or fraudulent business practices

12  described above, Plaintiff has suffered and will continue to suffer irreparable harm

13  unless Defendants are restrained from continuing to engage in said unfair,

14  unlawful and/or fraudulent business practices.

15    129.   Pursuant to California Business & Professions Code § 17200, *et seq*.,

16  Plaintiff is entitled to restitution of the wages withheld and retained by Defendants

17  during a period that commences four years prior to the filing of this complaint; a

18  permanent injunction requiring Defendants to pay all outstanding wages due to

19  Plaintiff, disgorgement of profits obtained through payroll tax and worker's

20  compensation fraud; an award of attorneys' fees pursuant to California Code of

21  Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a.   A declaration that Plaintiff is a common law employee for all purposes, including, but not limited to, ERISA;

b.   A declaration that Plaintiff is entitled to pension service credits under the Salaried Plan and PEP for all periods between 1995 and December 31, 2020;

c. Order YUM to remedy its breach of fiduciary duty, including, but not limited to, by correcting the PEP's and Salaried Plan's records to reflect all years of service for Plaintiff;

d. Order YUM to pay Plaintiff pension benefits in an amount equal to the amount he would have received had the PEP and Salaried Plan granted him service credits for the relevant time, along with prejudgment interest thereon;

e. A declaration that YUM breached its fiduciary duty by failing to grant service credits to Plaintiff for all years of service under the PEP and Salaried Plan;

f. A declaration that YUM has violated ERISA § 209(a), 29 U.S.C. § 1129(a);

g. Order appropriate equitable and injunctive relief to remedy YUM's violation of ERISA § 209(a), including an order that YUM use its own records to determine the pension benefits due or which may become due to Plaintiff;

h. Compensatory damages based on Plaintiff's inability to defer his compensation and receive YUM phantom stock options;

i. Recovery of the unpaid balance of the full amount of the unpaid regular wages and interest thereon, reasonable attorneys' fees and costs of the suit to the fullest extent permissible including those permitted pursuant to the California Labor Code §§ 203, 218.5, 218.6 and Code of Civil Procedure § 1021.5;

j. Compensatory damages for having to pay for necessary business expenses out of Plaintiff's own personal funds including health insurance premiums;

k. Attorney's fees under Labor Code § 2802(c);

l. Restitution of the wages withheld and retained by YUM;

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00414924.DOCX / 3}

Complaint                                                            Case No. 8:21-cv-1191

m. A permanent injunction requiring YUM to pay all outstanding wages due to Plaintiff, disgorgement of profits obtained through payroll tax and worker's compensation fraud;

n. An award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws;

o. Award reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA 502(g), 29 U.S.C. 1132(g);

p. Pre and post judgment interest, as afforded by law; and

q. Provide such other relief as the Court deems equitable and just.

DATED: July 9, 2021          BUTTERFIELD SCHECHTER LLP


By:  s/Marc S. Schechter
     MARC S. SCHECHTER
     PAUL D. WOODARD
     Attorneys for Plaintiff
     Tim Alders

{00414924.DOCX / 3}

Complaint                                              Case No. 8:21-cv-1191

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS