1  Marc S. Schechter, Bar No. 116190
   Paul D. Woodard, Bar No. 282470
2  Madison R. Beck, Bar No. 341072
   BUTTERFIELD SCHECHTER LLP
3  10021 Willow Creek Road, Suite 200
   San Diego, California  92131-1603
4  (858)444-2300/FAX (858)444-2345
   mschechter@bsllp.com
5  pwoodard@bsllp.com
   mbeck@bsllp.com
6
   Brent Buchsbaum, Bar No. 194816
7  Law Offices of Buchsbaum & Haag, LLP
   100 Oceangate Ste 1200
8  Long Beach, CA 90802
   562-733-2498 Fax: 562-628-5501
9  brent@buchsbaumhaag.com

10 Attorneys for Plaintiff TIM ALDERS

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13
   TIM ALDERS,                          CASE NO.  8:21-cv-01191-PGS-DFM
14
              Plaintiff,                Assigned For All Purposes To:
15                                      Judge:  Hon. Philip S. Gutierrez
              v.
16                                      OPPOSITION TO DEFENDANTS'
   YUM! Brands, Inc.; TACO BELL         MOTION TO DISMISS PLAINTIFF'S
17 CORP.; YUM! BRANDS, INC.,            SECOND AMENDED COMPLAINT
   401(k) PLAN; YUM! BRANDS,            AND OPPOSITION TO
18 INC. RETIREMENT PLAN; YUM!           DEFENDANTS' MOTION TO
   BRANDS, INC. PENSION                 TRANSFER VENUE IN THE
19 EQUALIZATION PLAN; the YUM!          ALTERNATIVE
   BRANDS, INC. INVESTMENT
20 COMMITTEE and DOES 1 through
   20,                                  Date; February 4, 2022
21                                      Time: 1:30 p.m.
              Defendants.
22                                      Complaint Filed:   July 9, 2021
                                        FAC Filed: September 16, 2021
23                                      SAC Filed:September 28, 2021

24

25

26

27

28

{00425112.DOCX /
5}

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. THE FACTS ...............................................................................................2

III. STANDARD OF REVIEW ........................................................................3

IV. ARGUMENT .............................................................................................4

    A.    Plaintiff is Exempted from the Exhaustion Requirement .................4

        1.    Exhaustion of Administrative Remedies is Futile .................4

        2.    Plaintiff was Denied Meaningful Access to the
            Administrative Review Process .............................................6

    B.    Plaintiff's Third, Fourth, and Fifth Claims are not Subject to
       the Exhaustion Requirement .....................................................9

    C.    Plaintiff States a Colorable Claim for Benefits Under the
       Plans ...........................................................................................11

        1.    The Salaried Plan and the PEP .............................................14

        2.    The EID .................................................................................14

        3.    The 401(k) Plan .....................................................................14

    D.    The Court has Discretion to Hear Plaintiff's State Law Claims
       in His Sixth and Eighth Claims for Relief. .....................................16

    E.    The Forum Selection Clause is Invalid as it Pertains to
       Plaintiff .........................................................................................17

    F.    Even If the Forum Selection Clause is Enforceable Against
       Plaintiff, the Court Should Deny Defendants' Request
       Because the Relevant Factors Weigh Against Enforcement of
       the Provision ...............................................................................20

    G.    Labor Law Claims .........................................................................22

    H.    In the Alternative, Should the Court Find any Pleading
       Inadequacies, the Court Should Grant Plaintiff Leave to
       Amend .........................................................................................23

V. CONCLUSION ...........................................................................................23

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

i

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended      Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila,*
   542 U.S. 200, 124 S. Ct. 2488 (2004) ...................................................16

*Alexander v. Codemasters Group Limited,*
   104 Cal.App.4th 129 (2002) ..................................................................19

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,*
   99 F. Supp. 3d 1110 (C.D. Cal 2015) ...................................................13

*Amaro v. Continental Can Co.,*
   724 F.2d 747 (9th Cir. 1984) ...................................................................9

*Amato v. Bernard,*
   618 F.2d 559 (9th Cir. 1980) ..............................................................4, 5

*Atl. Marine Constr. Co. v. United States Dist. Court,*
   571 U.S. 49 (2013) .....................................................................17, 18, 20

*Broam v. Bogan,*
   320 F.3d 1023 (9th Cir. 2003) .................................................................3

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) .....................................................................3

*Carijano v. Occidental Petroleum Corp.,*
   643 F.3d 1216 (9th Cir. 2011) ...............................................................21

*Conley  v. Gibson,*
   355 U.S. 41 (1957) ...................................................................................3

*Curry v. Contract Fabricators, Inc. Profit Sharing Plan,*
   891 F.2d 842 (11th Cir. 1990) ............................................................7, 8

*Diaz v. United Agric. Employee Welfare Benefit Plan & Trust,*
   50 F.3d 1478 (9th Cir. 1995) ...................................................................5

*Drake Bakeries, Inc. v. Am. Bakery & Confectionery Workers Int'l,*
   370 U.S. 254, 82 S. Ct. 1346 (1962) ......................................................7

*Encompass Office Solutions, Inc. v. Ingenix, Inc.,*
   775 F. Supp. 2d 938 (E.D. Tex. 2011) .................................................13

*Firestone Tire & Rubber Co. v. Bruch,*
   489 U.S. 101 (1989) ...............................................................................11

*Fujikawa v. Gushiken,*
   823 F.2d 1341 (9th Cir. 1987) .................................................................9

*Genentech, Inc. v. Abbott Labs.,*
   127 F.R.D. 529 (N.D. Cal. 1989) .........................................................23

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

ii

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended      Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015).........................................4

*Graphic Communications Union, Dist. Council No. 2 v. GCIU-Employer*
   *Retirement Ben. Plan*,
   917 F.2d 1184 (9th Cir. 1990)...............................................9, 11

*Haddock v. Bd. Of Dental Exam'rs*,
   777 F.2d 462 (9th Cir. 1985)......................................................3

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007).....................................................17

*Horan v. Kaiser Steel Retirement Plan*,
   947 F.2d 1412 (9th Cir. 1991).................................................4, 5

*Intershop Communications AG v. Superior Court*,
   104 Cal.App.4th 191 (2002)......................................................20

*Jacobsen v. Hughes Aircraft C o.*,
   105 F.3d 1288 (9th Cir. 1997)....................................................3

*Khoja v. Orexigen Therapeutics, Inc.*,
   2016 WL 3526128, at *7 (S.D. Cal. May, 19, 2016)...................4

*Maduka v. Sunrise Hosp.*,
   375 F.3d 909 (9th Cir. 2004)......................................................4

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006)......................................................3

*McGowin v. ManPower Int'l Inc.*,
   363 F.3d 556 (5th Cir. 2004)...................................................8, 9

*Mezyk v. U.S. Bank Pension Plan*,
   No. 3:09-cv-384-JPG, 2009 U.S. Dist. LEXIS 107574, at *10 (S.D. Ill.
   Nov. 18, 2009)........................................................................19

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)................................................................20

*Platt v. Moore*.
   15 F.4th 895 (9th Cir. 2021).....................................................16

*Rapp v. Henkel of Am., Inc.*,
   No. 8:18-cv-01128-JLS-E, 2018 U.S. Dist. LEXIS 224241 (C.D. Cal. Oct.
   3, 2018)..............................................................................18, 19

*Robles v. Schneider Nat'l Carriers, Inc.*,
   No: 16-cv-02482-JGB-KK, 2017 WL 8231246, at 4 (C.D. Cal. August 15,
   2017)....................................................................................22

*Silva v. Bieluch*,
   351 F.3d 1045 (11th Cir. 2003).................................................23

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended   Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

*Southeast Alaska Conservation Council v. Watson,*
    697 F.2d 1305 (9th Cir. 1983)......................................................................4

*Stewart Organization, Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ....................................................................................17

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ....................................................................................4

*Texas General Hospital, LP v. United Healthcare Services, Inc.,*
    2016 U.S. Dist, LEXIS 84082 at 10 (N.D. Tex. June 28, 2016)...............13

*United States v. Corinthian Colls.,*
    655 F.3d 984 (9th Cir. 2011).....................................................................23

*United states v. LSL Biotechnologies,*
    379 F.3d 672 (9th Cir. 2004).......................................................................3

*United States v. Redwood,*
    640 F.2d 963 (9th Cir. 1981).......................................................................3

*Vaca v. Sipes,*
    386 U.S. 171, 87 S. Ct. 903 (1967) .........................................................7, 8

*Vizcaino v. Microsoft,*
    120 F.3d 1006 (9th Cir. 1997)...................................................................11

## STATUTES

28 U.S.C. §1367(c)(3) ....................................................................................16

28 U.S.C. §1404(a) .....................................................................................1, 17

29 U.S.C. § 1059(a)(1) ..................................................................................11

29 U.S.C. § 1104(a) .......................................................................................11

ERISA § 209(a)(1)..........................................................................................11

Labor Code §203 ............................................................................................22

## RULES

Federal Rules of Civil Procedure 15(a) ........................................................23

Federal Rules of Civil Procedure 8(a)(2) .......................................................4

Federal Rules of Civil Procedure 12(b)(6) .............................................1, 3, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

iv

1
2
3
4
5
6
7
8
9
10
11

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff TIM ALDERS ("Plaintiff"), in his individual capacity, by and through his undersigned counsel, respectfully submits the following Memorandum of Points and Authorities in Opposition to the Rule 12(b)(6) Motion to Dismiss ("Motion or "Mot.") submitted by Defendants YUM! Brands, Inc. (hereinafter "YUM"), Taco Bell Corp. ("Taco Bell"), the YUM! Brands, Inc. 401(k) Plan (the "401(k) Plan), the YUM! Brands Inc. Retirement Plan (the "Salaried Plan"), the YUM! Brands, Inc. Pension Equalization Plan (the "PEP") (the 401(k) Plan, the Salaried Plan and the PEP are collectively referred to herein as the "Plans"), the YUM! Brands, Inc. Investment Committee (the "Investment Committee"), and DOES 1 through 20 (the aforementioned defendants are collectively referred to herein as "Defendants") on October 12, 2021.

# I. INTRODUCTION

Defendants seek to dismiss Plaintiff's Second Amended Complaint (the "Complaint" or "SAC") pursuant to Fed. R. Civ. P. 12(b)(6). Defendants allege the following: (1) Plaintiff failed to exhaust his administrative remedies as required under ERISA; (2) Plaintiff failed to state a claim under ERISA that he is entitled to the benefits he seeks; (3) Plaintiff's claims for breach of contract and failure to pay certain expenses are preempted by ERISA; (4) Plaintiff's claim based on wrongful failure to pay the employer portion of payroll taxes is preempted by the Internal Revenue Code; and (5) Plaintiff's state law claims are based solely on supplemental jurisdiction and therefore should be dismissed if the Court dismisses Plaintiff's federal claims. In the alternative, Defendants seek to transfer this lawsuit to the Western District of Kentucky pursuant to 28 U.S.C. §1404(a) because Defendants allege that the Plans contain valid forum selection clauses mandating that claims be brought in the Western District of Kentucky. For the reasons set forth below, the Court should deny Defendants Motion in its entirety.

{00425112.DOCX / 5}

1

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended      Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

## II. THE FACTS

This case involves the wrongful exclusion of Plaintiff from, and the denial of, Plaintiff's benefits under multiple ERISA Plans. The facts relevant for deciding this Motion are those set forth in the Complaint. (SAC at 3-12). As alleged therein, throughout the entire twenty-five years he worked as a common law employee for YUM and YUM Owned Brands, Plaintiff was misclassified as an independent contractor. Upon information and belief, other similarly situated YUM employees received salaries, bonuses, and employee benefits such as pensions, vacation pay, and health insurance. (SAC ¶ 40.) However, Plaintiff was only compensated on a monthly basis as a purported independent contractor and received no other employee benefits although he was treated as an employee for all other purposes.

On April 12, 2021, Plaintiff sent certified letters to the plan administrator of the Salaried Plan, the PEP, the YUM! Brands Executive Income Deferral Program ("EID"), and the 401(k) Plan requesting: (a) a copy of each plan's plan document (including all amendments); (b) a copy of each plan's trust agreement; and (c) a copy of each plan's summary plan description. (SAC ¶ 52.) Plaintiff did not receive any response whatsoever to his written request for plan documents made to the PEP or the EID. (SAC ¶ 53.) On April 22, 2021, YUM responded via letter to Plaintiff's written request seeking documents pertaining to the Salaried Plan. (SAC ¶ 54.) On May 10, 2021, YUM responded to Plaintiff's request seeking 401(k) Plan documents stating that Plaintiff was "not a participant in the plan" and denied his request. (SAC ¶ 55.)

On May 31, 2021, Plaintiff sent YUM a certified letter and email requesting a copy of his "benefit statement" for the Salaried Plan and PEP. (SAC ¶ 56.) On June 2, 2021, Plaintiff provided YUM with the requested information verifying his identity. (SAC ¶ 58.) On June 11, 2021, YUM responded stating that YUM is unable to provide Plaintiff with a copy of his benefit statement or

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

2

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended       Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

plan documents because Plaintiff is not a plan participant under the PEP or Salaried Plan. (SAC ¶ 59.) Defendants denied Plaintiff's requests for plan documents, thus depriving Plaintiff of meaningful access to the review process and preventing him from ever seeing the Plans before filing this lawsuit. (SAC ¶¶ 53, 59, 60.)

### III. STANDARD OF REVIEW

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a disfavored remedy and may only be granted in extraordinary circumstances. *Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003); *United States v. Redwood*, 640 F.2d 963, 966 (9th Cir. 1981). On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). It is well-settled that "[a] motion to dismiss for failure to state a claim may not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *United states v. LSL Biotechnologies*, 379 F.3d 672, 697 (9th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The Court's role at the 12(b)(6) stage is not to evaluate the strength or weakness of claims. *Jacobsen v. Hughes Aircraft C o.*, 105 F.3d 1288, 1292 (9th Cir. 1997). The "test is whether the facts, as alleged, support any valid claim entitling plaintiff to relief…not necessarily the one intended by plaintiff. Thus, a complaint should not be dismissed because plaintiff erroneously relies on the wrong legal theory if the facts alleged support any valid theory." *Haddock v. Bd. Of Dental Exam'rs*, 777 F.2d 462, 464 (9th Cir. 1985).

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "In deciding a motion to dismiss, the court can consider

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

3

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended       Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

only the pleadings and documents that are incorporated by reference therein or are properly the subject of judicial notice." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015). "While '[a] court may take judicial notice of the existence of matters of public record … it should not take notice of 'the truth of the facts cited therein''" *Khoja v. Orexigen Therapeutics, Inc.*, 2016 WL 3526128, at *7 (S.D. Cal. May, 19, 2016).

Fed. R. Civ. P. 8(a)(2) "provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, for claims other than those involving allegations of fraud, the Federal Rules "allow[] lawsuits based on conclusory allegations … to go forward." *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (alteration in the original).

## IV. ARGUMENT

### A.    Plaintiff is Exempted from the Exhaustion Requirement

#### 1.    Exhaustion of Administrative Remedies is Futile

Normally, "[a] beneficiary seeking a determination of rights or benefits under a plan must first exhaust the administrative remedies provided by the plan." *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991) (Citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). However, a plaintiff may be exempted from the general exhaustion requirement typically mandated by the Ninth Circuit and the terms of certain ERISA plans. Indeed, a district court has discretion to waive the exhaustion requirement, and should do so when exhaustion would be futile. *Southeast Alaska Conservation Council v. Watson*, 697 F.2d 1305, 1309 (9th Cir. 1983); *Amato v. Bernard*, 618 F.2d at 568. The Ninth Circuit explained, the futility exception to the exhaustion doctrine "is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz v. United Agric. Employee Welfare Benefit*

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}
4
Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended    Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

*Plan & Trust*, 50 F.3d 1478, 1486 (9th Cir. 1995).

Exhaustion of administrative remedies is futile where the Court has been "fully apprised" of the "decision as to the merits of the plaintiff's claim." *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991). In *Horan*, plaintiffs attempted to receive benefits under a retirement plan when the Plan Administrator submitted an amicus brief dictating its view that plaintiffs were not entitled to benefits under the terms of the plan. *Id.* at 1415-1416. The Ninth Circuit court found the amicus brief to have fully apprised them of the decision the Plan Administrator would make under administrative review, and therefore waived the exhaustion requirement. *Id.* at 1416.

While the exhaustion requirement does assist courts in decision-making, as discussed in *Amato*, this is not the case here. *Amato v. Bernard*, 618 F.2d at 568. Here, Defendants' Motion clearly dictates that "Plaintiff has not alleged facts showing that he is entitled, under the plain language of the plan documents, to the benefits and other relief he seeks", indicating the adverse determination Plaintiff *would* receive from the Committee upon submitting a new benefits request. (Defendants' Mot., at 12:6-8).

Although the present case is distinguishable from *Horan* due to the fact that the Court has been fully apprised by Defendants' Motion itself instead of an amicus brief, the determinations within Defendant's Motion deserve even more deference from the Court because it is Defendants' primary pleading filed with the Court, and therefore much more substantial than a supplemental brief. Moreover, the emails sent by the Committee in response to Plaintiff's original request for Plan Documents to determine his eligibility under the Plans further indicate the Committee's determination that Plaintiff is not a plan participant who is entitled to benefits.

As admitted by Defendants in their Motion, YUM's first response to Plaintiff specified that "[he was] not a participant in either plan," while the

5

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

second dictated that "[plaintiff is] not a plan participant". (Defendants' Mot. at 7:3-4;12-14). Through their assertions in the Motion and their emails to Plaintiff, the Plan administrators have fully apprised this Court of the Committee's decision as to the merits of Plaintiff's claim. The Court should therefore waive the exhaustion requirement and address the merits of Plaintiff's claims.

Defendants also mention the importance of the exhaustion requirement in promoting consistent treatment of claims, reducing frivolous lawsuits, and enhancing plan fiduciaries' ability to manage ERISA plans. However, adhering to these policies in an instance where the company has the authority to make a *determination of law* that dictates an individual's inclusion in, or exclusion from, an ERISA plan may undermine the policy behind ERISA itself: protecting individuals who are ERISA plan participants. In their determination of whether Plaintiff is an employee or an independent contractor, YUM is also determining whether Plaintiff qualifies as a participant under any of the Plans at all.

The determination of whether Plaintiff is a common law employee or an independent contractor is the key inquiry of Plaintiff's lawsuit. As such, this determination should not be made by Defendants just for the sake of plan management. Importantly, if Defendants were to continue to find through administrative review that Plaintiff is not a common-law employee, Plaintiff would be barred from participation in the Plans and face a deferential standard on the issue without ever having his claim heard by an independent trier-of-fact. This is the true reason for Defendants' request as it will eliminate the possibility of a *de novo* review by the Court of Plaintiff's claims.

For the stated reasons, the Court should waive the exhaustion requirement in favor of Plaintiff and deny Defendant's Motion.

### 2.    Plaintiff was Denied Meaningful Access to the Administrative Review Process

Courts have also found exhaustion of remedies to be futile when a plaintiff

{00425112.DOCX / 5}

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended          Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

1   has been denied meaningful access to the administrative review process. Relying

2   on the Supreme Court decision in *Vaca v. Sipes*, the Eleventh Circuit in *Curry v.*

3   *Contract Fabricators, Inc. Profit Sharing Plan*, found that "when a plan

4   administrator in control of the available review procedures denies a claimant

5   meaningful access to those [administrative review] procedures, the district court

6   has discretion not to require exhaustion." *Curry v. Contract Fabricators, Inc.*

7   *Profit Sharing Plan*, 891 F.2d 842, 846-847 (11th Cir. 1990); *Vaca v. Sipes*, 386

8   U.S. 171. In both *Vaca* and *Curry*, the courts considered the exhaustion

9   requirement. *Curry*, 891 F.2d 842 at 846; *Vaca*, 386 U.S. at 185. The Supreme

10  Court in *Vaca* held that an "employee should not be limited to the exclusive

11  remedial procedures established by the contract … when the conduct of the

12  employer amounts to a repudiation of those contractual procedures." *Vaca*, 386

13  U.S. at 185 (citing *Drake Bakeries v. Bakery Workers*, 370 U.S. 254, 260-263).

14  The Court did not hear the plaintiff's claims because it found that the employer

15  did not fail to comply with its contractual obligation to take said claims to

16  arbitration. *Id.* at 195. Thus, no repudiation had occurred. *Id.* However, in *Curry*,

17  the Circuit court held that the employee plaintiff was exempt from the exhaustion

18  requirement since the employer denied plaintiff access to administrative

19  remedies by failing to provide plaintiff with plan documents. *Curry*, 891 F.2d at

20  846-847. In both instances, the court acknowledged that when defendants prevent

21  a plaintiff's utilization of the administrative review process, as was done here,

22  plaintiff is exempted from the exhaustion requirement. This Court should not

23  deviate from those findings.

24       Here, on April 12, 2021, Plaintiff sent certified letters to the plan

25  administrator of the Salaried Plan, the PEP, the EID, and the 401(k) Plan

26  requesting a copy of each plan's plan document, a copy of each plan's trust

27  agreement, and a copy of each plan's summary plan description. (SAC ¶ 52.)

28  Plaintiff did not receive a response whatsoever to his written request for plan

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

7

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended     Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

documents made to the PEP or the EID. (SAC ¶ 53.) Following this, Plaintiff received two denials of access to plan documents; the first on May 10, 2021, and the second on June 11, 2021.

The first response from Defendants explicitly indicates that the Company was "not able to provide [Plaintiff] with the plan documents". (Defendants' Mot. at 7:3-4). The second response from Defendants states that the Company "do[es] not have any records [Plaintiff is] requesting." (Defendants' Mot. at 7:12-14). In so responding, Defendants prevented Plaintiff from accessing plan documents on the basis that he was not a plan participant. Without access to the Plan Documents resulting from Defendants' unreasonable refusal to furnish him with them, Plaintiff had no way of knowing that an administrative review process existed, let alone that he was required to utilize the process before filing a lawsuit in Federal Court.

Additionally, Defendants failed to directly inform Plaintiff through any means of communication that there was an official benefit claims procedure or that there was an internal review process that could be utilized by him. By refusing to provide Plaintiff with the necessary information to participate in the review process, Defendants denied Plaintiff meaningful access to the review process like the plaintiff in *Curry*, and the conduct of Defendants constituted a repudiation of the internal review process, comparable to the action described by the Supreme Court in *Vaca. See Curry*, 891 F.2d 842; *Vaca v. Sipes*, 386 U.S. 171.

While Defendants rely on *McGowin v. ManPower Int'l Inc.*, in their assertion that "the Plans' failure to provide such documents does not support Plaintiff's argument of futility," the present case is distinguishable. *McGowin v. ManPower Int'l Inc.*, 363 F.3d 556 (5th Cir. 2004); (Defendants' Mot. at 11:8-9). In *McGowin*, the court held that the plaintiff was not denied meaningful access to the administrative process where "there is no indication that [plaintiff] requested

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX /
5}

8

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended       Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

the plan documents or was told specifically that she could not obtain them." *McGowin*, 363 F.3d at 560. The facts of the present case are completely contrary; there is no dispute as to the fact that Plaintiff made multiple requests for plan documents which could have put him on notice of the administrative procedures, and there is no dispute as to the fact that Plaintiff was twice specifically told he could not obtain the documents. Defendants only made plan documents available to Plaintiff after the commencement of this litigation.

For the above reasons, Plaintiff has been denied meaningful access to the administrative review process and this Court should therefore waive Plaintiff from the exhaustion requirement and deny Defendants' Motion.

**B.  Plaintiff's Third, Fourth, and Fifth Claims are not Subject to the Exhaustion Requirement**

The Ninth Circuit has held that "[o]n the one hand, 'exhaustion of internal dispute procedures is not required where the issue is whether a violation of the terms or provisions of the statute has occurred.'" *Graphic Communications Union, Dist. Council No. 2 v. GCIU-Employer Retirement Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990) (quoting *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987)). "[E]xhaustion, at least to the level of the trustees, is ordinarily required where an action seeks "'a declaration of the parties' rights and duties' *under the pension plan*." *Id.* at 1187 (citing *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984).

In *Graphic Communications*, plaintiff attempted to forego the exhaustion requirement after alleging a special vesting claim. *Id.* at 1185-1187. Since the answer to the claim was within the terms of the trust agreement and not under the provisions of ERISA itself, the Ninth Circuit held that exhaustion of administrative remedies was required. *Id.* at 1187. Had the claim fallen under an ERISA provision, the plaintiff would have been exempt from the exhaustion requirement. *Id.* Here, Plaintiff alleges in his SAC three causes of action that

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

assert violations of ERISA itself.

Plaintiff's Third claim for relief states:

> ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1), requires that an employer which sponsors an employee benefit plan maintain records with respect to each of its employees sufficient to determine the benefits due or which may become due to the employees … By its failure to record service credits and maintain records of hours of service for misclassified common law employees like Plaintiff, YUM has failed to maintain records with respect to Plaintiff sufficient to determine the benefits due or which may become due to Plaintiff in violation of ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

(SAC at 15-16:14-28,1-3)

Plaintiff's Fourth Claim for relief states:

> 29 U.S.C. § 1104(a) requires a fiduciary to act solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses in administering the Plans. YUM and the Investment Committee breached their fiduciary duty by failing to: (1) properly apply the YUM Plans to Plaintiff as an eligible person; (2) identify Plaintiff as being eligible to participate in the YUM Plans; and (3) ensuring that Plaintiff was in fact included in the YUM Plans.

(SAC  at 16-17: 27-28, 1-6)

Plaintiff's Fifth Claim for relief states:

> ERISA requires a plan fiduciary to operate the plan in accordance with its terms. ERISA § 404(a)(1)(D). This duty requires that plan sponsors, as fiduciaries, properly classify workers with respect to their eligibility and participation in ERISA-covered plans. Additionally, 29 U.S.C. §§1104(a)(1)(A), (B) requires a plan fiduciary to discharge his or her duties for the exclusive purpose of providing benefits to participants and beneficiaries and act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting"… YUM's and the Investment Committee's multiple failures to satisfy the above-mentioned ERISA fiduciary duties resulted in Plaintiff's wrongful exclusion from participation in the YUM Plans.

(SAC at 17-18:16-28,3-5)

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

10

1    Each of these claims, which Defendants allege are derivative of Plaintiff's

2    claims for benefits, clearly state causes of action based on statutory violations

3    arising under ERISA and are <u>not</u> claims for benefits. For example, claim Three

4    asserts a claim under ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1), while claims

5    Four and Five assert breaches of fiduciary duties under 29 U.S.C. § 1104(a).

6    These claims do not involve a determination of Plaintiff's right to benefits under

7    any of the Plans, but rather assert that "violation[s] of the terms or provisions of

8    the statute [have] occurred." *Graphic Communications* at 1187.  Thus, these

9    claims do not require Plaintiff to exhaust his administrative remedies before

10    filing them. For these reasons, Plaintiff's Third, Fourth, and Fifth claims are not

11    subject to ERISA's exhaustion requirement and the Court should deny

12    Defendant's Motion with respect to these claims.

13    **C.    Plaintiff States a Colorable Claim for Benefits Under the Plans**

14    An individual with a colorable claim to benefits is considered a participant

15    of the plan. The Supreme Court has held that "[i]n order to establish that he or

16    she 'may become eligible' for benefits, a claimant must have a colorable claim

17    that (1) he or she will prevail in a suit for benefits, or that (2) eligibility

18    requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v.*

19    *Bruch*, 489 U.S. 101, 117-118 (1989). Former employees may have a colorable

20    claim to vested benefits under an ERISA plan. *Id.* at 117. Furthermore, an

21    individual's employment status is determined by the common law definition of

22    employee and not by the employer's designation or even the signing of a

23    document acknowledging independent contractor status; the individual's true

24    employment status controls. *See Vizcaino v. Microsoft*, 120 F.3d 1006, 1011-

25    1012, (9th Cir. 1997).

26    In *Vizcaino v. Microsoft*, plaintiffs asserted that their employer had

27    misclassified them as independent contractors when they were truly employees.

28    *Id.* at 1008-1009. The Ninth Circuit found that the agreements signed in

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

11

acknowledgement of the employee's independent contractor status did not control in determining the employment status of the employee, but rather that plaintiffs were employees under the common law. *Id.* at 1012.

In the present case, Plaintiff has pled in the SAC that Plaintiff was misclassified as an independent contractor by YUM, which effectively rendered him ineligible for participation in the Plans because he was not properly classified as an employee. Like *Vizcaino*, Plaintiff signed an agreement that included language concerning Plaintiff's status as an independent contractor; however, for all purposes of employment Plaintiff was treated as an employee.

As mentioned in the SAC, Plaintiff alleges that:

> at all times during which YUM intentionally misclassified Plaintiff as an independent contractor, YUM controlled both the work performed and the manner and means in which Plaintiff performed his work in the following ways: (a) YUM directed when, where, and how Plaintiff's work was to be done; (b) Plaintiff did not maintain his own work facilities, instead, from 1995 through January 2021, Plaintiff was provided his own private office and was required to work at Taco Bell's Corporate Office Headquarters located in Irvine, California. Plaintiff's employment with YUM was continuous during this time period; (c) YUM strictly directed Plaintiff's hours and days off. For example, Plaintiff was expected to and did in fact arrive to his office by 8 a.m. and would work until at least 6:00 p.m. (often later). Plaintiff was also required to be available to YUM beyond the normal 8 a.m. to 6:00 p.m. workday including being available on weekends. Plaintiff regularly worked in excess of 40 hours per week; (d) Plaintiff was required to log into YUM's corporate computer system every morning and was directed to utilize the computer system to conduct all of his work; (e) Plaintiff reported directly to senior HR leadership team members for YUM and YUM Owned Brands; (f) Plaintiff also reported directly to the chief talent officer for YUM; (g) YUM dictated the specific order and sequence of work performed by Plaintiff in accordance with YUM's company policy; (h) YUM assigned, directed, supervised, and controlled the employee recruitment services performed by Plaintiff; (i) Plaintiff was provided a YUM corporate email address (plaintiff@YUM.com) and a Taco Bell email address (plaintiff@tacobell.com). Plaintiff was required to use these two email addresses to provide all services to YUM and YUM Owned Brands during

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

12

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended
Complaint and Opposition to Defendants' Motion to Transfer Venue

Case No. 8:21-cv-01191-PGS-DFM

Plaintiff's employment; (j) YUM paid for and/or provided Plaintiff's office, office supplies, work computer, and laptop. Plaintiff was not responsible for paying for any of his office supplies; (k) YUM paid for all of Plaintiff's business-related travel, which was frequent. Plaintiff would routinely visit YUM Owned Brands' corporate campuses located in Louisville and Dallas; (l) Plaintiff was required to attend YUM employee-only events and meetings including those discussing highly confidential corporate matters; (m) YUM conducted annual performance evaluations of Plaintiff which were linked to Plaintiff's annual salary and bonus determinations; (n) YUM required Plaintiff to complete annual employee training on the topics of professional behaviors in the workplace (harassment) and computer security. Plaintiff had to complete questions following the training and would not be allowed to continue working until after the training and questions were completed in a satisfactory manner.

(SAC at 8-10:12-28,1-28,1-2)

These factors indicate that Plaintiff was, in fact, a common law employee of YUM. Having pled all of these facts to support his claim in the SAC, it is clear that Plaintiff has stated a colorable claim to benefits as a former employee of YUM.

Additionally, courts have held that an ERISA claim must only contain enough facts about the provisions of an ERISA plan to make a "claim plausible" and give a defendant "notice as to which provisions it allegedly breached." *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 969 (E.D. Tex. 2011) (held that general allegations were sufficient to state a claim for entitlement to benefits under ERISA); *see also*, *Texas General Hospital, LP v. United Healthcare Services, Inc.*, 2016 U.S. Dist, LEXIS 84082 at 10 (N.D. Tex. June 28, 2016) ("Plaintiffs' allegations contain enough facts about the provisions of the ERISA plans to make their ERISA [] claims plausible, and to give United adequate notice as to which provisions they allegedly breached."). "[A] plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that concerns the benefit in question." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal 2015).

13

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

Here, Plaintiff identifies and pleads specific, relevant plan terms under which he is eligible for benefits and that Defendants violated:

**1.      The Salaried Plan and the PEP**

As to the plan terms under the Salaried Plan and the PEP, Plaintiff alleges that:

> The terms of the Salaried Plan and the PEP provide that Plaintiff, as a common law employee of YUM, accrued pension service credits during the times he was misclassified as an independent contractor. Denying Plaintiff pension service credits during this time violates the terms of the Salaried Plan and the PEP and Plaintiff's rights thereunder … Because Plaintiff was misclassified as an independent contractor, he did not accrue pension service credits during the times he was misclassified as an independent contractor.

(SAC at 14:12-16,23-26)

**2.      The EID**

As to the plan terms under the EID, Plaintiff alleges:

> The terms of the EID provide that Plaintiff, as an executive level common law employee of YUM, should have been permitted to participate in the EID program. YUM breached the terms of the EID by not providing Plaintiff with an opportunity to participate in the EID. YUM was the proximate cause of Plaintiff being unable to participate in the EID as YUM controlled which employees were invited to participate in the program and YUM misclassified Plaintiff as an independent contractor. Plaintiff was damaged by not being permitted to participate in the EID to the extent he was unable to defer his compensation and reduce his potential tax exposure based on his income. Plaintiff was further damaged by not being able to defer any of his incentive bonus into the YUM Matching Stock Fund and thereby receive additional phantom shares.

(SAC at 19-20:16-28,1)

**3.      The 401(k) Plan**

As to the plan terms under the 401(k) Plan, Plaintiff alleges:

> The terms of the 401(k) Plan provides that Plaintiff, as a common law employee of YUM, was eligible to participate in the 401(k) Plan after completing 60 days of service. The 401(k) Plan further provides a six (6) percent match for employee deferrals made under the

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

14

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended     Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

plan. Denying Plaintiff the right to participate in the 401(k) Plan violated the terms of the 401(k) Plan and Plaintiff's rights thereunder. Because Plaintiff was misclassified as an independent contractor, he was not given the opportunity to make elective deferrals to the 401(k) Plan nor did he receive matching contributions from YUM equal to six (6) percent of any deferrals made to the 401(k) Plan.

(SAC at 14:17-26)

Plaintiff has pled more than enough clear and specific facts about each Plan and their terms, indicating the plausibility of his claims and the adequacy with which Defendants were provided notice as to the plan terms they breached. Due to the specificity with which Plaintiff plead the above facts, Plaintiff has stated both a plausible and colorable claim to benefits.

Defendants also assert that Plaintiff failed to provide them with adequate notice that he was stating a claim for plan benefits, which would render inapplicable the requirement that they provide him with plan documents. However, Defendants have cited no authority for this meritless contention. Regardless, Defendants were put on notice that Plaintiff had a colorable claim to benefits upon receiving Plaintiff's correspondence requesting plan documents. It is absurd for Defendants to suggest that a request to review plan documents and their terms would be made by anyone other than an individual who intends to make a claim for benefits under the plan. As such, Defendants were put on notice of Plaintiff's plausible, colorable claim to benefits and were required to produce plan documents upon Plaintiff's request, due to Plaintiff being considered a plan participant pursuant to relevant case law. But more importantly, there simply is no requirement that an individual requesting plan documents also submit a concurrent notice that they are stating a claim for plan benefits. Indeed, submission of such a claim could and should only be made after the relevant requested plan documents have been received and reviewed to determine if a colorable claim to benefits under the plan in fact exists. Defendants' unfounded

{00425112.DOCX / 5}

1  position in this regard puts the cart before the horse.

2  **D.   The Court has Discretion to Hear Plaintiff's State Law Claims in His Sixth and Eighth Claims for Relief.**

3

4       Plaintiff's state law claims are valid, and so long as jurisdiction is granted

5  over Plaintiff's ERISA claims, this Court has supplemental jurisdiction to hear

6  the state law claims. "[A]ny state law cause of action that duplicates,

7  supplements, or supplants the ERISA civil enforcement remedy conflicts with

8  the clear congressional intent to make the ERISA remedy exclusive and is

9  therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209. "28

10  U.S.C. §1367(c)(3) provides that the exercise of supplemental jurisdiction 'may'

11  be declined if 'the district court has dismissed all claims over which it has

12  original jurisdiction.'" *Platt v. Moore*, 15 F.4th 895, 909 (9th Cir. 2021).

13       Here, Plaintiff's state law claim in his Sixth Claim for Relief concerns the

14  EID, which is a non-qualified deferred compensation plan that is unfunded,

15  unsecured, and <u>not</u> governed by ERISA. As such, this cause of action in no way

16  duplicates, supplements, or supplants ERISA's civil enforcement remedy,

17  because there is no relative ERISA claim from which it could be derived.

18  Additionally, Plaintiff's state law claim in his Eighth Claim for Relief states an

19  entirely independent claim, alleging a violation of the California Labor Code.

20  This claim is unrelated to Plaintiff's claim for benefits, and derives from

21  Defendants' misclassification of Plaintiff's employment status as an independent

22  contractor. Neither of these claims targeted by Defendants duplicate, supplement,

23  nor supplant an ERISA remedy. Indeed, these claims focus on issues that cannot

24  be rectified by ERISA's civil enforcement remedy at all.

25       Even were Plaintiff's ERISA claims dismissed, this Court still has

26  discretionary jurisdiction to hear Plaintiff's state law claims according to the

27  Ninth Circuit in *Davila*, and should do so, as leaving Plaintiff's claims involving

28  the EID and the California Labor Code undecided will have a substantial,

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

16

1   harmful impact on Plaintiff. Therefore, this Court should exercise its discretion

2   to hear Plaintiff's supplemental state law claims regardless of its determination

3   of Plaintiff's ERISA claims.

**E.      The Forum Selection Clause is Invalid as it Pertains to Plaintiff**

5           A forum selection clause may be enforced through a motion to transfer

6   under §1404(a). That provision states that "for the convenience of parties and

7   witnesses, in the interest of justice, a district court may transfer any civil action

8   to any other district or division where it might have been brought or to any

9   district or division *to which all parties have consented*." *Atl. Marine Constr. Co.*

10  *v. United States Dist. Court*, 571 U.S. 49, (2013) (Emphasis added). The

11  Supreme Court has termed a plaintiff's ability to select the most advantageous

12  forum "venue privilege", "[b]ut when a plaintiff agrees by contract to bring suit

13  only in a specified forum—presumably in exchange for other binding promises

14  by the defendant—the plaintiff has effectively exercised its 'venue privilege'

15  before a dispute arises." *Id.* at 63. "[A] valid forum-selection clause, []

16  "represents the parties' agreement as to the most proper forum." *Id.* at 62

17  (Quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, (1988).

18          Not all forum selection clauses are enforceable. "Forum-selection clauses

19  are set aside for unreasonableness: "(1) if the inclusion of the clause in the

20  agreement was the product of fraud or overreaching; (2) if the party wishing to

21  repudiate the clause would effectively be deprived of his day in court were the

22  clause enforced; and (3) if enforcement would contravene a strong public policy

23  of the forum in which suit is brought." *Holland Am. Line Inc. v. Wartsila N. Am.,*

24  *Inc*., 485 F.3d 450, 457 (9th Cir. 2007).

25          In *Atl. Marine*, a subcontractor sued Atlantic Marine Construction

26  Company in the Western District of Texas despite the forum selection clause

27  requiring that suit be brought in Virginia. *Atl. Marine Const. Co. v. U.S. Dist.*

28  *Court for W. Dist. of Texas*, 571 U.S. 49, 53-54. The district court denied

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

17

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended        Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue

Atlantic's motions to dismiss, and the Fifth Circuit denied Atlantic's petition for writ of mandamus. *Id.* at 49. The U.S. Supreme court granted certiorari and reversed the prior decisions, holding that "*when the parties have agreed* to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62 (emphasis added).

In *Rapp v. Henkel of Am., Inc.*, the plaintiff became a plan participant of his employer's retirement pension plan when there was no forum selection clause contained in the plan. *Rapp v. Henkel of Am., Inc.*, 2018 U.S. Dist. LEXIS 224241 at 1-2. Later, the plan was merged with another that did contain a forum selection clause. *Id.* at 2. Plaintiff argued that since he never agreed to or had the opportunity to agree to the clause, finding him bound by it was essentially unreasonable, and Plaintiff requested that the clause be set aside. *Id.* at 5. The court held that under Ninth Circuit law, a third-party beneficiary is bound by the rights defined by the contract. *Id.* at 7.

The present case is distinguishable from both *Atl. Marine* and *Rapp*. Here, Plaintiff qualifies as a "plan participant" due to him being an individual with a colorable claim to benefits; not due to a formal determination by the plan administrator that he qualifies as such. Because of this, Plaintiff never formally became a party to the contracts (i.e., the Plans). Moreover, while Defendants continue to assert that the forum selection clause is valid and enforceable as to Plaintiff, they nevertheless continue to deny that Plaintiff is a plan participant (and therefore a party to the contract) at all. Defendants cannot have their cake and eat it too. To wit, they must decide either that Plaintiff is indeed a plan participant – thus entitling him to benefits – and the forum selection clause is therefore enforceable against him, or alternatively that he is not a plan participant and that the forum selection clause is therefore not enforceable against him. As of now, it clearly appears Defendants have chosen the latter of these two alternatives.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

Plaintiff was also denied access to the plan documents containing the forum selection clause before he filed his initial complaint. As someone excluded from the plan (despite having a colorable claim to benefits), Plaintiff never consented or agreed to the forum selection clause nor even had a chance to review it. In fact, without access to the plan documents, Plaintiff was unaware of the existence of a forum selection clause until after filing his Complaint. See *Mezyk v. U.S. Bank Pension Plan*, No. 3:09-cv-384-JPG, 2009 U.S. Dist. LEXIS 107574, at \*10 (S.D. Ill. Nov. 18, 2009). (In *Mezyk*, the plaintiffs did not receive notice of the form selection clause until after they commenced litigation. The court found "[t]o bind the plaintiffs to a Plan provision of which they were not reasonably notified would be manifestly unjust and would be a reason for declining to dismiss or transfer a case under either § 1404(a) or § 1406(a),") Plaintiff never exercised his "venue privilege", and the court should not deny him such right by enforcing the forum selection clause oh which he had no knowledge.

Additionally, Plaintiff has not yet been determined to be a third-party beneficiary of any of the Plans. Instead, Plaintiff has been continuously excluded from becoming a beneficiary of the Plan, and is consistently deemed unqualified to participate. Furthermore, the enforcement of this forum selection clause is far more unreasonable than it would have been in *Rapp* because enforcement of the clause as it pertains to Plaintiff would create an intolerable public policy of forcing individuals to adhere to contracts they never agreed to nor even had an opportunity to see. Surely this Court would agree that it is strong, general public policy in contract law that an agreement is invalid if such basic elements such as mutual assent expressed by valid offer and acceptance are not present. "Mutual assent or consent is necessary to the formation of a contract". *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141 (2002); see also *Intershop Communications AG v. Superior Court*, 104 Cal.App.4th 191, 200

BUTTERFIELD SCHECHTER LLP
ATTORNEYS & COUNSELORS

19

{00425112.DOCX / 5}

(2002) ["a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state"].)

Moreover, the idea that such a contract was formed without assent from the individual it binds suggests that the forum selection clause is unenforceable as a product of fraud. Suggesting that the forum selection clause - unseen and not agreed to by Plaintiff, who Defendants argue and insist is not even a participant under the plan - is valid and binding on Plaintiff, indicates Defendants' attempt to defraud and deceive this Court into validating an otherwise totally invalid "contract".

For these reasons, the forum selection clause is invalid as it pertains to Plaintiff, and Defendants' alternative request to transfer venue should likewise be denied.

## F.   Even If the Forum Selection Clause is Enforceable Against Plaintiff, the Court Should Deny Defendants' Request Because the Relevant Factors Weigh Against Enforcement of the Provision

Even if the Court finds that the venue provision contained in the Plans is enforceable against Plaintiff, the Court must still weigh whether the public interest factors disfavor a transfer. "[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." See *Atl. Marine*, 571 U.S. at 63-64. However, the court "may consider arguments about public-interest factors[.]" *Id.* "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 64, 62 n.6 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)) (alterations in original).

As to the first public interest factor, Plaintiff proffers that this District is slightly less congested when you take into consideration the respective number of judgeships, the average cases per judgeship, the median time from filing to

{00425112.DOCX / 5}

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

disposition, and the percentage of cases lasting three years. This District has significantly more judgeships (28) compared to the Western District of Kentucky (5). Although this District has on average more cases filed compared to the Western District of Kentucky, the average total filings per judgeship are not significantly different with this District averaging 614 and the Western District of Kentucky averaging 415 (See Decl. Paul Woodard ¶ 4, Exhibit A.) Moreover, accordingly to Ballotpedia.org, the median time from filing to disposition for civil cases is five months in this District compared to ten months in the Western District of Kentucky. *Id*. Lastly, there is a greater percentage of civil cases pending three years or more in the Western District of Kentucky (8%) compared to this District (6%). *Id*. Accordingly, this factor weighs against the transfer of venue.

As to the second public interest factor, "the local interest factor weighs in favor of a California forum where a California plaintiff is suing a California defendant over conduct that took place in the state." *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1233 (9th Cir. 2011). Here, Plaintiff is a California resident and at least one of the Defendants, Taco Bell, is a California corporation with its headquarters in Irvine, California. Notably, YUM! Brands, Inc. is a North Carolina corporation, not a Kentucky corporation. Moreover, the primary conduct at issue that will determine if Plaintiff is eligible as a participant under the Plans - Plaintiff's employment activities - took place almost exclusively within the state of California. Thus, California has a strong local interest in this matter and this factor significantly weighs against transfer of venue.

The third public interest factor, the familiarity with governing law, certainly weighs against transfer because Plaintiff asserts California state law claims in addition to federal ERISA violation claims. Plaintiff asserts five federal law claims and four California state law claims. (See SAC ¶¶ 63-156.) Moreover,

21

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

Plaintiff proffers that this District is more familiar with handling ERISA claims compared the Western District of Kentucky based on the number of cases filed in this District, which would necessarily correspond to more ERISA cases being filed in this District (17,182 compared to 1,866). (Decl. Woodard ¶ 4, Exhibit A.) With respect to the California state claims, this District is unquestionably more familiar with the applicable state laws. Therefore, this factor also weighs strongly against the transfer of venue.

Based on the foregoing, even if the venue provision were enforceable against Plaintiff, the public interest factors outweigh it and the Court should deny Defendants' request to transfer this local case to the Western District of Kentucky.

## G.   Labor Law Claims

Defendants argue that the 7th Cause of Action for waiting time penalties under Labor Code §203 is preempted by the Internal Revenue Code ("IRC"). While that may be true with regard to any claim for actual payment of employer payroll tax, the gravamen of the 7th Cause of Action is that the wages were late, leading to a waiting time penalty under Labor Code §203.  The cases Defendants cite in support of their arguments, including *Robles v. Schneider Nat'l Carriers, Inc.*, No: 16-cv-02482-JGB-KK, 2017 WL 8231246, at 4 (C.D. Cal. August 15, 2017), merely stand for the proposition that tax reimbursement claims are preempted by the federal tax scheme.  These cases do not hold that the failure to pay all wages, including employer payroll taxes, at the time of termination somehow preempts the California Labor Code's requirements regarding the timing of payments.

Additionally, Plaintiff believes the 7th Cause of Action can be amended to include other wage underpayments besides payroll tax, such as unpaid vacation, which would also trigger liability under the 7th Cause of Action.

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

22

**H.     In the Alternative, Should the Court Find any Pleading Inadequacies, the Court Should Grant Plaintiff Leave to Amend**

If this Court finds inadequacies in Plaintiff's Complaint, the Court should grant Plaintiff leave to amend his Complaint. If a court grants a motion under Rule 12(b)(6), leave to amend "shall be freely given when justice so requires." Rule 15(a). "The standard for granting leave to amend is generous." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). In fact, Rule 15(a) severely restricts a court's discretion to dismiss without leave to amend. Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one more chance to amend the complaint before the district court dismisses the action with prejudice. *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003). Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

## V.  CONCLUSION

Based on the foregoing reasons, Defendants' Motion should be denied in its entirety. In the alternative, if the court grants all or part of the relief requested in Defendant's Motion, then Plaintiff requests leave of Court to file an amended pleading.

Respectfully submitted,

DATED: January 14, 2022          BUTTERFIELD SCHECHTER LLP


By:  s/Paul D. Woodard
      MARC S. SCHECHTER
      PAUL D. WOODARD
      COREY F. SCHECHTER
      MADISON R. BECK
      Attorneys for Plaintiff
      TIM ALDERS

BUTTERFIELD
SCHECHTER LLP
ATTORNEYS & COUNSELORS

{00425112.DOCX / 5}

Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended      Case No. 8:21-cv-01191-PGS-DFM
Complaint and Opposition to Defendants' Motion to Transfer Venue