KILPATRICK TOWNSEND & STOCKTON LLP
SUSAN W. PANGBORN (State Bar No. 282533)
spangborn@kilpatricktownsend.com
KENDRA C. CHAPMAN (State Bar No. 294030)
kchapman@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: 415 576 0200 / Facsimile: 415 576 0300

YUM! Brands, Inc.; TACO BELL CORP.; YUM! BRANDS, INC. 401(k) PLAN; YUM! BRANDS, INC. RETIREMENT PLAN; YUM! BRANDS, INC. PENSION EQUALIZATION PLAN; the YUM! BRANDS, INC. INVESTMENT COMMITTEE

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

TIM ALDERS,

Plaintiff,

v.

YUM! BRANDS INC. AND TACO BELL CORP.,

Defendants.

Case No. 8:21-cv-01191-PSG-DFM

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR ACTIONS ARISING UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT AND RELATED STATE LAW ACTIONS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Date: February 4, 2022
Time: 1:30 p.m.
Ctrm.: 6A, 6th Floor
Judge: Hon. Philip S. Gutierrez

Complaint Filed: July 9, 2021
First Amended Complaint Filed: September 16, 2021
Second Amended Complaint Filed: September 28, 2021
Trial Date: N/A

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff's Plan Benefit Claims Should Be Dismissed Due to His Failure to Exhaust the Plans' Administrative Remedies. ..... 1

B. Plaintiff's Third, Fourth and Fifth Claims Should Also Be Dismissed for Failure to Exhaust. ..... 6

C. Plaintiff's Sixth Claim Is Preempted by ERISA. ..... 7

D. The Seventh Claim Regarding Employer-Side Tax Withholdings Fails As a Matter of Law. ..... 8

E. Plaintiff Provides No Reason Why This Action Should Not Be Transferred Per the Plans' Valid Forum Selection Clauses. ..... 8

F. Public Interest Factors Favor Transfer ..... 10

G. Granting Plaintiff Leave To Amend Would Be Futile and Therefore Should Be Denied. ..... 11

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .......... 8

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
No. CV-14-02139-MWF, 2015 WL 12733443
(C.D. Cal. Apr. 10, 2015) .......... 9

*Amato v. Bernard*,
618 F.2d 559 (9th Cir. 1980) .......... 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*,
571 U.S. 49 (2013) .......... 10, 11

*Becker v. Wells Fargo & Co.*,
No. 20-cv-01803-JST, 2020 WL 12787709
(N.D. Cal. Sept. 21, 2020) .......... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .......... 9

*Carrico v. City and County of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) .......... 12

*Collazo v. Infonet Servs. Corp.*,
No. CV 13-02206 PSG, 2015 WL 13917163
(C.D. Cal. Apr. 8, 2015) .......... 7

*Conklin v. Brookfield Homes Holdings, Inc.*,
No. SACV 08-00452-CJC, 2009 WL 10671564
(C.D. Cal. Oct. 6, 2009) .......... 7

**TABLE OF AUTHORITIES**
(continued)

Page


*Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552 (N.D. Tex. 2001) .......... 6

*Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990) .......... 4

*Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011) .......... 6

*Diaz v. United Agric. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478 (9th Cir. 1995) .......... 6

*Foman v. Davis*, 371 U.S. 178 (1962) .......... 12

*Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076 (9th Cir. 2005) .......... 6

*Graphic Communications Union v. GCIU-Employer Retirement Benefit Plan*, 917 F.2d 1184 (9th Cir. 1990) .......... 6

*Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011) .......... 7

*Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412 (9th Cir. 1991) .......... 2

*Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018 (C.D. Cal. 2008) .......... 9

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .......... 8

*McGowin v. ManPower International, Inc.*, 363 F.3d 556 (5th Cir. 2004) .......... 3

*Mezyk v. U.S. Bank Pension Plan*, No. 3:09-cv-384-JPG, 2009 WL 3853878 (S.D. Ill. Nov. 18, 2009) .......... 9

*Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001) .......... 4

**TABLE OF AUTHORITIES**
(continued)

Page

*Myers v. Wells Fargo Sec., LLC*, No. CV 19-5245-MWF-RAO, 2019 WL 6329629 (C.D. Cal. Nov. 25, 2019) ........ 7

*Peters v. Wells Fargo Bank, N.A.*, No. 17-cv-4367-JST, 2018 WL 398238 (N.D. Cal. Jan. 12, 2018) ........ 10

*Rapp v. Henkel of Am., Inc.*, No. 8:18-cv-01128-JLS-E, 2018 WL 6307904 (C.D. Cal. Oct. 3, 2018) ........ 9, 10, 11

*Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634 (5th Cir. 1999) ........ 6

*Roberts v. Union Pac. R.R. Co.*, 16 F. App'x 730 (9th Cir. 2001) ........ 5

*Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727 (9th Cir. 2009) ........ 7

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351 (9th Cir. 1990) ........ 10

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010) ........ 1

*Testa v. Becker*, No. CV 10-638-GHK, 2010 WL 1644883 (C.D. Cal. Apr. 22, 2010) ........ 9

*United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006 (9th Cir. 2013) ........ 5

*Vizcaino v. Areas USA, Inc.*, No. CV 15-417-JFW, 2015 WL 13573816 (C.D. Cal. Apr. 17, 2015) ........ 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Wilson v. United HealthCare Ins. Co.*, No. 2:17-cv-03059-DCN, 2020 WL 5203782 (D.S.C. Sept. 1, 2020) .......... 4

**Statutes**

California Labor Code (“Labor Code”) .......... 8

ERISA .......... *passim*

Federal Insurance Contributions Act .......... 8

Internal Revenue Code (“IRC”) .......... 8

# I. INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition") ignores key facts and relies on bald, unsupported assertions to argue Defendants' Motion should be denied. Plaintiff even misstates the applicable standard of review, citing to decisions that predate the Supreme Court's holdings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Iqbal* and *Twombly*, a court reviewing a complaint on a motion to dismiss must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and look to whether well-pleaded factual allegations "*plausibly* give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-79 (emphasis added). To survive a motion to dismiss, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678; *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

As discussed in Defendants' Motion and below, Plaintiff has failed as a matter of law to plead factual allegations sufficient to avoid dismissal or to show why the Court should not transfer this case to the Western District of Kentucky.

# II. ARGUMENT

## A. Plaintiff's Plan Benefit Claims Should Be Dismissed Due to His Failure to Exhaust the Plans' Administrative Remedies.

Defendants' Motion shows that (i) Plaintiff should be required to exhaust his administrative remedies under the Plans' claims procedures, and (ii) his Plan benefit claims should be dismissed so this can occur. Although Plaintiff argues against exhaustion, he does not dispute key reasons for requiring exhaustion. Plaintiff acknowledges that exhaustion is normally required with respect to ERISA benefit claims. Opp. at 4. He does not dispute that at least his First and Second Claims are such claims, nor does he dispute the exceptional complexity of the Plan provisions that must be interpreted and applied to his claims (because of claims against multiple Plans and repeated Plan changes over the 25 years he delayed bringing his

claims). And he does not dispute that this complexity will make it especially helpful to the Court to have Plaintiff's claims for benefits first considered administratively.

Despite the above, Plaintiff argues that exhaustion would be futile because the Court has already been "fully apprised" of Defendants' "decision as to the merits of the plaintiffs' claim" by statements in Defendants' Motion (quoting *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991)). In *Horan* the plan administrator had already reached, and filed with the court, its conclusion regarding all of the plan interpretation questions presented. That is not this case. For example, nothing in Defendants' Motion reflects an administrator's determination that Plaintiff was not a common law employee. The Motion simply notes a great deal more is at issue in determining whether Plaintiff satisfied all of the Plans' terms to qualify for participant status beyond whether he was a "common law" employee.

Unlike *Horan*, the Court here is far from "fully apprised" by the Motion's limited observation that Plaintiff has not pled facts bearing on any of the other eligibility conditions. *See id*. Surprisingly, Plaintiff chose to forgo pleading such facts even though he received more than 95 Plan documents before filing his Second Amended Complaint (SAC). As a result, many Plan interpretation questions remain open, and the real issue is whether it would aid the resolution of this dispute if these questions were first addressed by the Plans' Administrator. Clearly it would.

Plaintiff next mischaracterizes the brief responses Plaintiff received to his requests for certain documents to argue that these responses "have fully apprised this Court of *the Committee's* decision as to the merits of Plaintiff's claim." Opp. at 6 (emphasis added). For instance, Plaintiff refers to the following two responses which were quoted in Defendant's Motion to Dismiss:

> [I]t *appears* that you were not a participant in either plan…. If you have any questions, *please feel free to contact* the Yum! Brands Executive Compensation Team….
>
> In response to your request, *we have researched our records* and have found

> that you are not a plan participant and therefore, *we do not have any records* you are requesting.

Motion at 7 (emphasis added). Plaintiff mischaracterizes these responses as a final and unequivocal conclusion that Plaintiff "[was] not a participant in either plan", Opp. at 5.[1] As Defendants' Motion acknowledges, these responses reflected a degree of confusion at Plan document and benefit statement requests from someone who had just completed a 25-year relationship during which he repeatedly affirmed in writing he was an independent contractor.[2]

The first quoted passage is a "What am I missing?" response that invited follow-up. The second simply reported there were no benefits statements for Plaintiff in the Plans' records because the records did not list him as a participant. These were frontline employees reporting what they had found. Neither response was a considered, final interpretation of the Plans.

Most importantly, such responses from individual frontline human resources personnel are far from a Committee decision on the merits,[3] a distinction that *McGowin v. ManPower International, Inc.*, 363 F.3d 556 (5th Cir. 2004), emphasized and specifically held refuted assertions of futility:

> [S]tatements made by Exxon-Mobil employees who are not responsible for adjudicating benefits claims do[] not show that McGowin's claim would be

---

[1] Plaintiff also continues to allege that "Plaintiff did not receive a response whatsoever to his written request for plan documents made to the PEP or the EID." Opp. at 2, 6-7. This statement is expressly contradicted by Plaintiff's allegation that YUM responded to his request for documents under the PEP or Salaried Plan on June 11, 2021. Opp. at 2-3, 7-8.

[2] Contrary to Plaintiff's assertion (Opp. at 15), document requests are not always made by participants. They come, *e.g.*, from participants' creditors, spouses in divorce proceedings and those fronting for participants who seek confidentiality. Thus, receipt of a document request is not notice that the requestor has a colorable claim for benefits (particularly not where that conflicts with 25 years of affirmations of independent contractor status that are not disclaimed).

[3] No Committee Members (*see*, Member listing in §2.1(hh) of Exh. D, pp. II-23, 24) participated in the exchanges with Plaintiff (see, Exh. C correspondence).

futile if she properly presented it for administrative review. The futility exception does not apply.

*Id.* at 560. Thus, the responses to Plaintiff do not support his claim of futility.

Plaintiff cites to *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846-847 (11th Cir. 1990), *abrogated on unrelated grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001), to argue the failure to provide Plaintiff with certain requested documents, by itself, mandates application of the futility exception. *Curry* is easily distinguished. In *Curry*, there was never a question whether the plaintiff was a plan participant and entitled to a benefit; only when to pay the benefit was at issue. The plaintiff sought an immediate payment, and the administrator stated payment had to be delayed until age 65. Plaintiff's lawyer questioned the basis for delay in a call with the administrator and then requested plan documents (both during the call and in a subsequent letter). After more than eight months with no documents produced, Mr. Curry filed suit.

As opposed to the confusion created by Plaintiff's letters, *Curry* involved a request by a recognized plan participant who had brought a clear claim for benefits. In addition, rather than the open-ended responses provided by Yum personnel (*e.g.*, "[I]t *appears* that you were not a participant. . . . If you have any questions, *please feel free to contact* [us]" (emphasis added).), which left the door open for Plaintiff to clarify, Mr. Curry's attorney was directed to the plan's accountant and then immediately rebuffed. Even then, Mr. Curry allowed over eight months for a response, while Plaintiff filed suit less than one month after Yum's last response. In addition, only two provisions in a single plan were at issue in *Curry*, and the district court specifically found that the administrator had acted "fraudulently." *Id.* Accordingly, the Curry facts present a very different case than is present here where the Court could benefit significantly from a proper administrative process.[4]

---

[4] *See Wilson v. United HealthCare Ins. Co.*, No. 2:17-cv-03059-DCN, 2020 WL 5203782, *16 (D.S.C. Sept. 1, 2020) (under all circumstances, "failure to provide

Plaintiff next tries to argue that the normal importance of promoting consistent claim treatment, enhancing plan fiduciaries' ability to manage the plans, and avoiding frivolous lawsuits (all of which *Amato*[5] held justify exhaustion) should be discounted in this case. He claims Defendants seek exhaustion so their legal determination of Plaintiff's common law employee status will receive deference upon judicial review. Opp. at 6. This argument fails. First, it disregards all the other conditions on Plan participation that are the most challenging part of this suit, and where the Administrator's interpretation of Plan terms will be invaluable.[6] Also, contrary to Plaintiff's assumption, deference to administrator interpretations does not apply to questions of law (such as whether Plaintiff was a common law employee).[7]

In sum, this case is far from one where a waiver of exhaustion is appropriate. Rather, the Plans' complexity and the great many interpretations that are needed to determine eligibility over a 25-year period make this case an exceptional example of exhaustion's benefits. Therefore, considering the totality of the circumstances, as appropriate for a discretionary issue like exhaustion,[8] the Court should dismiss Plaintiff's benefit claims and remand them for exhaustion.

---

the Plan document does not demonstrate futility by clear and positive evidence").

[5] *Amato v. Bernard*, 618 F.2d 559, 567-68 (9th Cir. 1980).

[6] For example, under the Salaried Plan, at all times at issue, eligibility required being a "salaried person", being in a "salaried classification", or being "currently classified on the employment records of an Employer as a salaried employee." At certain times, the Salaried Plan also included an exclusion for persons *classified* as contractors, regardless of their actual common law employee status.

[7] Where deference applies, a court will not overturn an administrator's claim determination unless it is "arbitrary, capricious, made in bad faith, not supported by substantial evidence, *or erroneous on a question of law*." *See Roberts v. Union Pac. R.R. Co.*, 16 F. App'x 730, 733 (9th Cir. 2001) (emphasis added) (citation omitted).

[8] *See United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1011 (9th Cir. 2013) (all relevant factors must be considered in exercising discretion).

### B. Plaintiff's Third, Fourth and Fifth Claims Should Also Be Dismissed for Failure to Exhaust.

Plaintiff argues his Third, Fourth and Fifth Claims are exempt from exhaustion because he has framed them to assert violations of ERISA's statutory provisions, Opp. at 9-11. But if exhaustion could be avoided by characterizing an allegation of denied benefits (such as Plaintiff's exclusion from Plan participation) as a fiduciary breach or another ERISA statutory claim, exhaustion could be routinely evaded, frustrating the scheme for considering benefit claims that *Amato* requires. Consistent with *Amato*, it is now well-settled that any attempt to disguise claims for benefits as statutory claims must be rejected.[9]

Plaintiff's Fourth and Fifth Claims are nothing more than assertions of "Plaintiff's wrongful exclusion from participation in the YUM Plans." SAC at 16-18. In an attempt to find authority to exclude these claims from exhaustion, Plaintiff cites to *Graphic Communications Union v. GCIU-Employer Retirement Benefit Plan*, 917 F.2d 1184 (9th Cir. 1990). But *Graphic Communications* supports exhaustion here. *Graphic Communications* clarifies that seeking to enforce specific ERISA terms is a statutory claim exempt from exhaustion, but seeking to enforce plan terms (as Plaintiff attempts here by asserting his Plan eligibility) is a benefits claim subject to exhaustion. *Id.* at 1187.[10] Put another way, Plaintiff asserts that *Plan*

---

[9] *See, e.g., Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1082 (9th Cir. 2005) (rejecting fiduciary claim based on denial of long-term disability benefits), *overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011)); *see also Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (breach of fiduciary duty claim dismissed because claim for benefits was "predominate cause of action"); *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 556 (N.D. Tex. 2001) ("[B]reach of fiduciary duty claim is merely a disguised claim for benefits and, as such, is untenable.").

[10] *See also Diaz v. United Agric. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1484 (9th Cir. 1995) (rejecting the argument that an ERISA claimant can "attach a 'statutory violation' sticker to his or her [denial of benefits] claim and then . . . use that label as an asserted justification" for failure to exhaust).

*terms* require eligibility for Yum's common law employees, which is a benefit claim. He does not (and cannot) assert that *ERISA's terms* mandate eligibility for common law employees, and thus his Fourth and Fifth Claims are not statutory claims.

In Plaintiff's Third Claim, he alleges a failure to maintain records as required by ERISA § 209(a)(1). However, as explained in Defendants' Motion, Motion at 16, a violation of § 209(a)(1) cannot occur unless Plaintiff is entitled to benefits under the terms of the Plans. This core element of Plaintiff's Third Claim is a Plan interpretation issue and thus subject to exhaustion.

In short, the Court should look at the true nature of these claims (and not their disguises), and for the reasons discussed above, dismiss Plaintiff's Third, Fourth and Fifth Claims in favor of exhausting Plaintiff's administrative remedies.

### C. Plaintiff's Sixth Claim Is Preempted by ERISA.

Plaintiff defends filing a state contract law claim against the EID Plan (his Sixth Claim) by asserting without authority that EID is not governed by ERISA. While top hat plans[11] are exempt from certain ERISA requirements, they are still governed by the enforcement and administrative provisions of ERISA,[12] are subject to the exhaustion requirement[13], and are protected from state law claims by ERISA's preemption provisions[14]. Because Plaintiff's California law Sixth Claim duplicates

---

[11] Plaintiff does not contest that the EID is a top hat plan. Further, this court has previously determined that a similar executive deferred compensation plan was a top hat plan, governed by ERISA, and subject to the exhaustion requirement with respect to claims for benefits. *See Myers v. Wells Fargo Sec., LLC*, No. CV 19-5245-MWF-RAO, 2019 WL 6329629 at *2, *5-6 (C.D. Cal. Nov. 25, 2019).

[12] *Conklin v. Brookfield Homes Holdings, Inc.*, No. SACV 08-00452-CJC (PJWx), 2009 WL 10671564 (C.D. Cal. Oct. 6, 2009).

[13] *See Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727 (9th Cir. 2009).

[14] *See, e.g.*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1080-87 (C.D. Cal. 2011); *Collazo v. Infonet Servs. Corp.*, No. CV 13-02206 PSG (AGRx), 2015 WL 13917163 (C.D. Cal. Apr. 8, 2015).

the remedy available under § 502(a)(1)(B), it is preempted by ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).

**D. The Seventh Claim Regarding Employer-Side Tax Withholdings Fails As a Matter of Law.**

As discussed in Defendants' Motion, Plaintiff improperly attempts to shoe-horn a claim for repayment of payroll taxes into a claim under the California Labor Code ("Labor Code"). Faced with clear authority, Plaintiff now concedes that the Internal Revenue Code ("IRC") and the Federal Insurance Contributions Act ("FICA") preempt his claim that he is owed any repayment for "employer payroll taxes" (Seventh Claim). Plaintiff now pivots, focusing just on his assertion that the taxes he paid would support a claim for waiting time penalties under Labor Code Section 203. However, Plaintiff provides no authority indicating purportedly improper tax calculations will subject an employer to liability for failure to timely pay final wages. Put simply, tax payments and withholdings are not "wages" that could trigger waiting-time penalties under Section 203.[15]

**E. Plaintiff Provides No Reason Why This Action Should Not Be Transferred Per the Plans' Valid Forum Selection Clauses.**

Plaintiff's Opposition falls far short of meeting his "heavy burden of proof" to "clearly show" why the Plans' forum selection clauses should not be enforced. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 17 (1972). His arguments are

[15] "Wages" is defined in the Labor Code as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200. Under this definition, YUM did not withhold Plaintiff's wages as is required by Section 203. These amounts are taxes, not wages. Further, the intent of Section 203 is to penalize an employer who willfully retains wages owed *to an employee*. *See* Cal. Lab. Code § 203. Here, any purportedly unpaid "employer payroll taxes" would have been payable to IRS by YUM, not to Plaintiff as wages. Lastly, Plaintiff's argument that he could further amend the SAC to provide additional support for his Section 203 claim is nothing more than, "I'll come up with something." Any additional facts should have been alleged in the SAC.

illogical and have been rejected by various authorities. His alternative effort to resist transfer based on traditional public interest factors fares no better; such factors do not support denying transfer of this action.

Plaintiff claims the forum selection clauses should not be enforced because he "never consented or agreed to the forum selection clause nor even had a chance to review it." The Supreme Court has flatly rejected this as a ground for refusing to enforce a valid forum selection clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (enforcing a forum selection clause in a non-negotiated cruise ship ticket). Moreover, courts in this District have rejected the same argument as applied to an ERISA plan forum selection clause. *See Rapp v. Henkel of Am., Inc.*, No. 8:18-cv-01128-JLS-E, 2018 WL 6307904, at *3 (C.D. Cal. Oct. 3, 2018); *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1024 (C.D. Cal. 2008).

Plaintiff's reliance upon *Mezyk v. U.S. Bank Pension Plan*[16] is misplaced. In *Mezyk*, unlike here, the defendants added a forum selection clause to the plan after plaintiffs had already initiated their lawsuit. *Id.* at *4. Moreover, *Mezyk*'s reasoning has been expressly rejected by multiple courts in this District. *See Testa v. Becker*, No. CV 10-638-GHK (FMOx), 2010 WL 1644883, at *6 (C.D. Cal. Apr. 22, 2010) ("*Mezyk* appears to rest at bottom on the long-rejected notion that [forum selection clauses] in form or adhesion contracts are per se unenforceable."); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV-14-02139-MWF (VBKx), 2015 WL 12733443, at *14 (C.D. Cal. Apr. 10, 2015). In short, it is irrelevant that Plaintiff did not agree to or have notice of the forum selection clause. Indeed, courts have noted that a "typical beneficiary does not even know that the forum selection clause exists." *Laasko*, 566 F. Supp.2d at 1024 (citation omitted).

Finally, Plaintiff argues, with no authority, that the forum selection clauses should not be enforced because there has not been a "formal determination by the plan administrator that he qualifies as [a participant or] third party beneficiary."

---

[16] No. 3:09-cv-384-JPG, 2009 WL 3853878, at *5 (S.D. Ill. Nov. 18, 2009).

Opp. at 18-19. But Plaintiff cannot have it both ways. Plaintiff claims he is entitled to benefits under the Plans. By this, he is also claiming that he is a participant/beneficiary, and so any such claim can only be brought in the Western District of Kentucky.[17] Plaintiff's attempt to distinguish *Rapp*, 2018 WL 6307904 and *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013), fails, as neither relied on any "formal determination" plaintiffs were entitled to benefits before ruling that the forum selection clauses were enforceable.[18]

**F. Public Interest Factors Favor Transfer**

Plaintiff does not dispute that where, as here, a valid, enforceable forum selection clause exists, the traditional Section 1404(a) analysis is replaced with consideration of three specific public interest factors. Opp. at 20. However, even then, public interest factors will "rarely defeat" a transfer to the contractually selected forum. *Atl. Marine Constr. Co.*, 571 U.S. at 64-65.

Contrary to Plaintiff's assertion, the first factor is not in his favor because he cannot show that transfer would delay the adjudication of this matter. Plaintiff acknowledges that official statistics show that both districts dispose of litigation matters in similar timeframes and caseloads per judge are "not significantly different." Opp. at 20-21. When the caseload and average time from filing to trial is similar, this factor is "neutral" and does not weigh against transfer.[19]

---

[17] "[I]t is well-settled contract law that the scope of a third-party beneficiary's rights is defined by the contract," including any forum selection clauses. *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (citation omitted).

[18] Indeed, in *Rapp*, the forum selection clause was enforced even though the plan administrator had formally determined plaintiff was *not a plan participant*. *Rapp*, 2018 WL 6307904, at *1.

[19] *Becker v. Wells Fargo & Co.*, No. 20-cv-01803-JST, 2020 WL 12787709, at *4 (N.D. Cal. Sept. 21, 2020); *Peters v. Wells Fargo Bank, N.A.*, No. 17-cv-4367-JST, 2018 WL 398238, at *6 (N.D. Cal. Jan. 12, 2018) (noting "the relative court congestion and time of trial in each forum is neutral" where caseload in respective

As to the second public interest factor, Plaintiff mischaracterizes this suit as between himself and California and North Carolina corporations. Opp. at 21. In fact, his claims are directed at the conduct of the Plan fiduciaries that took place in Kentucky, where the Plans are administered. Kentucky is therefore unquestionably the "home" of this controversy. *See Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6. Moreover, because the Plans are administered in Kentucky, the courts there have "a strong interest in resolving the action." *Rapp*, 2018 WL 6307904, at *5.

Finally, Plaintiff claims this Court will be more familiar with the governing law based on the number of cases filed here and the Court's experience with California law. This argument rests on unsupported leaps in logic, not least of which is an apparent belief that Kentucky federal judges are not equally capable of interpreting the relevant law. In fact, there is no clear basis to conclude this District is more familiar with ERISA law, and all federal judges routinely apply the laws of states other than those in which they sit. Therefore, this factor does not "overwhelmingly disfavor a transfer," as Plaintiff must prove. *See Atl. Marine Constr. Co.*, 571 U.S. at 67.

**G. Granting Plaintiff Leave To Amend Would Be Futile and Therefore Should Be Denied.**

Even accepting Plaintiff's allegations in the SAC, his claims fail as a matter of law. Plaintiff has not indicated he can cure the defects raised in Defendants' Motion by again amending his complaint. Because there is no reasonable possibility of cure, Defendant's Motion should be granted without leave to amend.

Moreover, Plaintiff has already had two opportunities to replead. Counsel met and conferred regarding the pleading deficiencies before Plaintiff filed his First Amended Complaint, but he added no allegations to cure the deficiencies. Plaintiff's repeated failure to plead a viable case further justifies denial of leave to amend. *See Vizcaino v. Areas USA, Inc.*, No. CV 15-417-JFW (PJWx), 2015 WL 13573816, at

---

districts is "similar").

*4 n.6 (C.D. Cal. Apr. 17, 2015) (dismissing without leave to amend where "Plaintiff has already been given an opportunity to amend his Complaint, and his First Amended Complaint contains the same pleading deficiencies").

Finally, leave to amend may be denied where it would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Here, allowing Plaintiff leave to amend the SAC will not cure Plaintiff's admitted failure to exhaust his administrative remedies under ERISA. Thus, the Court should dismiss this matter so Plaintiff can pursue his administrative remedies (preserving his right to refile after exhaustion and ensuring the Court has the benefit of the administrator's interpretations of Plan provisions).

## III. CONCLUSION

As discussed in Defendants' Motion and above, Plaintiff has failed to plead sufficient facts to support his claims. Applying the correct standard of review, Defendant's Motion to Dismiss should be granted without leave to amend, and Plaintiff should be required to exhaust the Plans' administrative procedures. Plaintiff's meritless arguments against remand to the Plan's administrative procedures should be rejected, given the compelling reasons supporting such remand. Further, the Court should not credit Plaintiff's attempt to recharacterize clear benefit claims as "statutory" in order to avoid exhaustion. In the alternative, the Court should transfer the case in its entirety to Kentucky in accordance with the Plans' forum selection clause.

DATED: January 21, 2022

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Susan W. Pangborn*
SUSAN W. PANGBORN

Attorneys for Defendants
YUM! Brands, Inc. and Taco Bell Corp.