1  KILPATRICK TOWNSEND & STOCKTON LLP
   SUSAN W. PANGBORN (State Bar No. 282533)
2  spangborn@kilpatricktownsend.com
   KENDRA C. CHAPMAN (State Bar No. 294030)
3  kchapman@kilpatricktownsend.com
   Two Embarcadero Center, Suite 1900
4  San Francisco, CA 94111
   Telephone:  415 576 0200
5  Facsimile:   415 576 0300

6  Attorneys for Defendants
   YUM! Brands, Inc.; TACO BELL CORP.;
7  YUM! BRANDS, INC. 401(k) PLAN; YUM!
   BRANDS, INC. RETIREMENT PLAN; YUM!
8  BRANDS, INC. PENSION EQUALIZATION
   PLAN; the YUM! BRANDS, INC.
9  INVESTMENT COMMITTEE

10                 **UNITED STATES DISTRICT COURT**

11            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12                      **WESTERN DIVISION**

13

14  TIM ALDERS,                          Case No. 8:21-cv-01191-PSG-DFM

15           Plaintiff,                  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
16       v.                             **DEFENDANTS' MOTION FOR ATTORNEY FEES**

17  YUM! Brands, Inc.; TACO BELL
    CORP.; YUM! BRANDS, INC.             (29 U.S.C. § 1132(g)(1); Fed. R. Civ. P.
18  401(k) PLAN; YUM! BRANDS, INC.       54(d)(2); LR 54-10)
    RETIREMENT PLAN; YUM!
19  BRANDS, INC. PENSION                 Date:      August 12, 2022
    EQUALIZATION PLAN; the YUM!          Time:      1:30 p.m.
20  BRANDS, INC. INVESTMENT              Ctrm.:     6A, 6th Floor
    COMMITTEE and DOES 1 through         Judge:     Hon. Philip S. Gutierrez
21  20,
                                         Complaint Filed:  July 9, 2021
22           Defendants.                 First Amended Complaint Filed:
                                         September 16, 2021
23                                       Second Amended Complaint Filed:
                                         September 28, 2021
24                                       Trial Date:          N/A

25

26

27

28

## I.     INTRODUCTION

After waiting more than 25 years to file a lawsuit challenging his classification as an independent contractor, Plaintiff admitted that he was not a participant in any of Defendants' retirement or executive compensation plans, making it clear that he did not have a plausible claim to benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). This defect persisted through three successive complaints notwithstanding Defendants' good faith efforts in a meet and confer call to explain to Plaintiff that his claims were deficient. Following that call, Plaintiff made no changes to his initial claims, instead adding similarly deficient claims for benefits from a 401(k) plan to which he never attempted to contribute. Plaintiff's extraordinary delay and unreasonable and baseless claims have resulted in substantial legal fees for Defendants, which they now seek to recover as permitted by ERISA § 502(g); 29 U.S.C. § 1132(g). Plaintiff has the means and obligation under ERISA to reimburse Defendants for the costs he imposed on them.

## II.    SUMMARY OF FACTS AND PROCEEDINGS

This case arose from Plaintiff's work for YUM and YUM-owned brands between 1995 and 2020. Docket No. 28, p.1. Plaintiff alleged in three successive complaints dated July 9, 2021, September 16, 2021, and September 28, 2021, that he was misclassified as an independent contractor during this time, which implicated his eligibility for various benefit plans (the "Plans"). Docket No. 28, p.1.

Critically, Plaintiff did not allege that he was a participant in any of the Plans but only that he was "excluded . . . from the definition of 'employee' covered by the YUM Plans" and thus excluded from participating in the YUM Plans. SAC ¶ 50. As the Court concluded, "Such allegations are insufficient to state a colorable claim to vested benefits." Docket No. 28, p.1.

Defendants provided copies of approximately 98 Plan documents prior to the date Plaintiff filed his FAC and approximately 43 additional Plan documents before he filed his SAC. In addition, in advance of the FAC and SAC, counsel conferred and

Defendants' counsel explained that Plaintiff's claims were deficient in several

respects. This included the invalidity under ERISA case law of attempting to pass off

claims for Plan benefits as fiduciary breach claims and, most importantly, that it is

*not* enough to allege only misclassification as a contractor given each of the Plans'

multiple requirements for participation. Declaration of Susan Pangborn filed herewith

at Paragraph 15. However, instead of trying to winnow or rehabilitate his existing

claims, Plaintiff added an additional meritless claim for benefits from a 401(k) plan

(to which he never attempted to contribute)—further increasing Defendants' litigation

costs.

Accordingly, this Court granted dismissal of all federal law claims on February

1, 2022, without leave to amend, and declined to exercise jurisdiction over Plaintiff's

state law claims. Docket No. 28. Plaintiff did not appeal, and that Order is now final.

## III.    ARGUMENT

In an ERISA action, the court may exercise its discretion to award reasonable

attorneys' fees and costs to either party. *See* 29 U.S.C. § 1132(g). In particular, courts

may grant fees to prevailing defendants against individual ERISA plaintiffs. *See*

*Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997)

("We first disabuse the district court of the suggestion that we favor one side or the

other in ERISA fee cases. The statute is clear on its face—the playing field is

level."); *Reilly v. Charles M. Brewer Ltd.,* 349 Fed. App'x 155 (9th Cir. 2009)

(upholding award of fees to defendant ERISA plan who was sued by an individual

plan participant); *Epstein v. Unum Life Ins. Co. of Am.,* 2004 U.S. Dist. Lexis 224763

(C.D. Cal. Oct. 12, 2004); *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1248-49

(N.D. Cal. 2008) (collecting cases awarding fees against individual plan participants).

To obtain such fees, parties must demonstrate that (1) they have achieved

"some degree of success on the merits," and (2) the award is justified under the five

factor test set forth in *Hummell v. S.E. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir.

1980). *See Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010); *Simonia v.*

1  *Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010). Here,

2  Defendants achieved complete success on the merits because all of Plaintiffs' federal

3  law claims were dismissed without leave to amend, the Court declined to exercise

4  supplemental jurisdiction over state law claims, the Court closed the case, and

5  Plaintiff did not appeal.

6  　　The five *Hummell* factors are: (1) the degree of the opposing party's

7  culpability or bad faith; (2) the ability of the opposing party to satisfy an award of

8  fees; (3) whether an award of fees against the opposing party would deter others from

9  acting in similar circumstances; (4) whether the party requesting fees sought to

10  benefit all participants and beneficiaries of an ERISA plan or to resolve a significant

11  legal question regarding ERISA; and (5) the relative merits of the parties' positions.

12  634 F.2d at 453. None of these factors is necessarily decisive, some may not be

13  pertinent in a given case, and various combinations of factors can support an award

14  of attorneys' fees. *See Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir. 1986). Here,

15  all factors favor a fee award.

16  　　**A.　　Culpability or Bad Faith**

17  　　To avoid a finding of bad faith or culpability under the *Hummell* factors, a

18  plaintiff must have had a *reasonable* belief that he could prove an actionable ERISA

19  claim. *See Cline v. Indus. Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223,

20  1236 (9th Cir. 2000); *B.R. v. Beacon Health Options*, No. 16-CV-04576-MEJ, 2018

21  WL 1184763 at *5 (N.D. Cal. Mar. 7, 2018) (finding this factor in defendant's favor,

22  and ultimately granting a defendant's fee request, where plaintiffs claimed benefits

23  but "were unable to allege in the FAC *any specific plan term* that Defendant violated

24  by denying coverage" (emphasis added)). No such reasonable belief could exist here.

25  　　Even after being provided with copies of more than 140 Plan documents, each

26  listing specific eligibility requirements beyond common law employee status, and

27  after the conference between parties' counsel that highlighted the original

28  complaint's failure to plead facts that could establish participant status, Plaintiff

made no attempt to rehabilitate his claims to allege he was a participant who met all of the requirements for benefits under the Plans, requirements that demand much more than a bare allegation of employee status. Instead, he continued to implausibly assert only that "[u]pon information and belief, *employees* who were employed by YUM or a YUM Owned Brand were eligible to participate in the YUM Plans" (emphasis added). SAC ¶45. *Compare Angichiodo v. Honeywell Pension & Sav. Plan*, No. CV-15-00097-PHX-NVW, 2017 WL 1833586 (D. Ariz. May 8, 2017) (finding culpability or bad faith where plaintiff's belief that she could prove an actionable ERISA claim was based on an incorrect assumption that was corrected by information received before she filed suit). Likewise, Plaintiff continued to plead what were simple claims for benefits in the guise of fiduciary breaches without credibly alleging participant status. Plaintiff persisted with these futile arguments through three separate complaints (despite Defendants' good faith conference) until Plaintiff's claims were soundly rejected by this Court.

**B.    Ability to Satisfy Fees**

Plaintiff's substantial income over his years of service to Defendants is apparent on the face of Plaintiff's SAC, in which he asserts that he was compensated by Defendants at the "executive level", SAC par. 110. In addition, it is specifically supported by the contracts between Plaintiff and one or more Defendants, which indicate his total retainer income and target bonus from Defendants alone was between $300,000 and $465,000 per year during the 25-year period in which he performed such services (even before considering any additional income he earned from non-retainer projects for Defendants, above-target bonuses, performing services for other companies, or otherwise through the operation of his company, Alders Associates, Inc.).[1]

---

[1] Pangborn Decl. ¶ 3, Exh. B Docket No. 16-1. As discussed in Defendant's Motion to Dismiss, these contracts were provided by Plaintiff's counsel to Defendants' counsel in connection with this litigation, are uncontested by Plaintiff, and form the basis of Plaintiff's claims in the SAC. Accordingly, they should be treated as

However, Defendants are not required to affirmatively establish Plaintiff's ability to pay in order to justify a fee award. *See, e.g.*, *B.R. v. Beacon Health Options*, No. 16-CV-04576-MEJ, 2018 WL 1184763 at *8 (N.D. Cal. Mar. 7, 2018) (awarding fees to defendants where individual plaintiffs failed to establish inability to pay). Also, courts in the 9th Circuit have awarded fees against plaintiffs with much lower incomes. *See, e.g.*, *Angichiodo v. Honeywell Pension & Sav. Plan*, No. CV-15-00097-PHX-NVW, 2017 WL 1833586 at *3 (D. Ariz. May 8, 2017) (awarding fees against individual plaintiff with total annual income of just over $50,000); *Radfer Tr. v. First UNUM Life Ins. Co.*, No. C 05-1867 PJH, 2005 WL 8177784 (N.D. Cal. Nov. 1, 2005) (awarding fees against plaintiff who was unable to work, had no income, and had no assets except those awarded in a particular judgment). Even the possibility that Plaintiff may have squandered his prior earnings would not necessarily bar a fee award. *See Est. of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997) ("[A]ny inability to pay was likely the fault of the personal representative" who was the plaintiff); *Moreno v. S.J. Weaver Contracting, Inc.*, No. C 04-4699 SI, 2006 WL 2827908 (N.D. Cal. Oct. 3, 2006) ("*Hummell* states that the Court should consider … 'the ability of the opposing part[y] to satisfy an award of fees,' not whether a party 'can easily afford' to pay fees.").

## C.   Deterrence

This factor favors relief when a fee award would serve to deter groundless litigation. *See Credit Managers Ass'n v. Kennesaw Life & Accident Ins.* Co., 25 F.3d 743, 748 (9th Cir. 1994); *Angichiodo v. Honeywell Pension & Sav. Plan*, No. CV-15-00097-PHX-NVW, 2017 WL 1833586 at *3 (D. Ariz. May 8, 2017). Under the facts,

---

incorporated into the SAC. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). These contracts indicate that Plaintiff was generally paid a monthly retainer between $22,000 and $31,000, plus in many years an annual bonus payment targeted at between 15% and 25% of his "annual fee" or his "annual retainer", resulting in total target compensation of between $300,000 and $465,000 per year.

this factor supports a fee award here.

As discussed above, Plaintiff refused to recognize the shortcomings of his lawsuit and instead filed three successive complaints, without making any attempt to fix the initial claims that failed to plausibly allege participant status, and then added a similarly deficient claim regarding the 401(k) Plan. All of this happened after Defendants' counsel had explained the initial complaint's shortcomings in counsel conferences.

Plaintiff's relentless pursuit of costly litigation despite clear law to the contrary is precisely the behavior that ERISA's fee-shifting statute is intended to deter. Absent an award of fees, nothing will stop him or other would-be ERISA plaintiffs from filing similarly meritless lawsuits and prosecuting them to the defendants' detriment, even with no plausible basis for doing so.

### D. Whether Defendants Sought to Benefit All Participants or Resolve a Significant Legal Question

With respect to the Pension Plan, Defendants' successful motion sought to preserve and did preserve assets in the Pension Plan trust for the future benefit of all participants and beneficiaries in the Pension Plan, rather than having to pay these assets to Plaintiff as benefits not authorized by the plan. Accordingly, this factor favors the grant of a fee award. *See Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*, No. LACV0902885JAKEX, 2013 WL 12170494 at *8 (C.D. Cal. Nov. 15, 2013) (this factor favored a fee award where defendant's actions in the suit ran to the financial benefit of the trust and plaintiff's claims lacked merit).[2]

---

[2] *Cf Sanjiv Goel, M.D., Inc. v. Motion Picture Indus. Pension & Health Plan*, No. CV 14-2056 PSG (CWX), 2015 WL 13376563 at *4-5 (C.D. Cal. Oct. 23, 2015) (denying defendants' motion for fees in a case where defendant's actions in litigation would *not* run to benefit of plan trust maintained for exclusive purpose of providing benefits to participants and beneficiaries); *Bilyeu v. Morgan Stanley Long-Term Disability Plan*, No. CV 08-2071-PHX-SRB, 2011 WL 13301646 at *3 (D. Ariz. Jan. 11, 2011) (similarly denying defendants' motion for fees in a case where defendant's actions in litigation would *not* protect plan assets).

### E.    Relative Merits

Defendants argued several meritorious bases for the dismissal of Plaintiff's claims—in particular Plaintiff's failure to plausibly allege participant status. Based on that failure, the Court dismissed all of Plaintiff's federal law claims, without leave to amend, and declined to exercise jurisdiction over the state law claims, thus closing the case entirely. Plaintiff did not even bother to appeal. That order of dismissal is now final and Plaintiff's entire case is dismissed. There was no merit to the lawsuit, which could not even survive the pleading stage, despite three attempts. Accordingly, this factor favors grant of a fee award. *See B.R. v. Beacon Health Options*, No. 16-CV-04576-MEJ, 2018 WL 1184763 at *9 (N.D. Cal. Mar. 7, 2018) (finding this factor favored a fee award where complaint included "purely conclusory" assertions that certain alleged facts fulfilled the plan's requirements for benefits); *see also Est. of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997) (same where plaintiff claimed benefits that plaintiff was not entitled to under the terms of the plan).

### F.    Lodestar Calculation

When an ERISA litigant is entitled to an award of attorneys' fees, the amount of fees to be awarded should be calculated via the "lodestar" method, by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 945 (9th Cir. 2007). The court may then adjust the lodestar amount upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *See Van Gerwen v. Guarantee Mut. Life Ins. Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000).

In judging the reasonableness of hours spent, "The question is not whether . . . in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work

was performed." *Woolridge v. Marlene Indus. Corp.,* 898 F. 2d 1169, 1177 (6th Cir. 1990). Counsel's "sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case." *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988). Factors such as the novelty and complexity of the legal issues presented should considered in this analysis. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 726 (1987).

Attorneys are not required to record in great detail how each minute of their time was expended. *See Hensley,* 461 U.S. at 437 n.12. They need only "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *USW v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.,* 512 F.3d 555, 565 (9th Cir. 2008), *quoting Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983).

Here, the Court should award the sum of $263,373.91[3], as increased for fees relating to this Motion that will be submitted later. Given the scope and depth of work required here (as described below), Defendants' counsel's lodestar is reasonable.

### 1.     The Time Spent on the Case Was Reasonable

Attached as Exhibit E to the Declaration of Susan Pangborn, filed herewith, is the Billing Detail in this matter. This document describes the work performed in connection with this litigation. The case was filed on July 9, 2021, and not dismissed until February 1, 2022. As shown in the Billing Detail, and prior to work related to this motion, Defendants' counsel spent 521.4 hours on this case, with a total value of $263,373.91.

Defendants' counsel reviewed and analyzed three separate complaints and

---

[3] This amount reflects only attorneys' fees incurred by Defendants prior to the commencement of work related to this Motion.

several hundred plan documents (including original plan documents, restatements and amendments) and provided Plaintiff with versions of more than 140 definitive plan documents that comprehensively reflected the applicable provisions for all the years at issue and encompassed thousands of pages. The scope of this work was exponentially increased by Plaintiff's decades-long delay in bringing his claims, combined with the fact that benefit plans are typically revised every two to three years as required by changes in law or regulations or as a result of comments in Internal Revenue Service determination letter reviews or periodic changes in the business. In addition, Defendants' counsel conferenced with Plaintiff's counsel, and filed and briefed a motion to dismiss or in the alternative to transfer venue. Each of Plaintiffs' pleadings raised a number of legal theories that required substantial time to research and rebut, particularly given the dollar amount of the benefits that Plaintiff claimed. In addition, ERISA is "an enormously complex and detailed statute," *Varity Corp. v. Hower,* 516 U.S. 489, 516 (1996) (Thomas, J., dissenting), and courts have taken this complexity into account in evaluating the appropriateness of fee awards. *See, e.g., Bd. of Trs. v. Safety Sealed Water Sys. LLC,* 2016 U.S. Dist. Lexis 122450, at *5 (D. Nev. Sept. 7, 2016).

Compensable time also includes "time spent in establishing entitlement to an amount of fees awardable." *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir. 1986). The number of hours and total value of this time will be provided following a decision on this motion.

### 2.      The Rates Charged By Defendants' Counsel Are Reasonable

A reasonable hourly rate takes account of an attorney's experience, skill, and reputation. *See Welch, supra,* 480 F.3d at 946. The Court should consider the rates paid to attorneys of comparable ability and reputation for similarly complex work in the relevant community. Affidavits of attorneys regarding prevailing fees in the community and rate determinations in other cases can be used as evidence of prevailing market rates. *See United Steel Workers v. Phelps Dodge Corp.,* 896 F.2d

1    403, 407 (9th Cir. 1990). The moving party carries the initial burden of establishing

2    the reasonableness of fees, and once that burden is met, the opposing party must

3    submit evidence in order to rebut the claim of reasonableness. *Id.*

4         The fees requested are based on hourly billable rates of $546.25 for litigation

5    partner Susan Pangborn, $695 for ERISA partner Mark Wincek, $415 for litigation

6    associate Kendra Chapman, $425 for ERISA associate Peter Daines, and $266 for

7    paralegal Monica Roberts. These rates reflect both the rates actually charged and

8    market rates. *See Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007).

9         The Declaration of Susan Pangborn, filed herewith, supports the conclusion

10   that the hourly rates charged by Kilpatrick Townsend attorneys are reasonable based

11   on their level of experience, skill, and reputation. Therefore, the Court should accept

12   these rates in connection with calculating an award of fees in this matter.

13   **IV.    CONCLUSION**

14        For the reasons set forth above, Defendants respectfully request that the Court

15   grant its Motion for Attorneys' Fees in the amount of $263,373.91 (as well as the

16   additional reasonable fees related to this motion).

17

18   DATED: March 4, 2022                Respectfully submitted,

19                                        KILPATRICK TOWNSEND & STOCKTON LLP

20                                        By:

21                                            SUSAN W. PANGBORN

22                                        Attorneys for Defendants
                                          YUM! Brands, Inc.; TACO BELL CORP.;
23                                        YUM! BRANDS, INC. 401(k) PLAN; YUM!
                                          BRANDS, INC. RETIREMENT PLAN;
24                                        YUM! BRANDS, INC. PENSION
                                          EQUALIZATION PLAN; the YUM!
25                                        BRANDS, INC. INVESTMENT
                                          COMMITTEE

26

27

28